No. 87-151

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

IN RE THE MARRIAGE OF
CAROL MITCHELL,

        Petitioner and Respondent,

    and

FRANCIS O. MITCHELL,

        Respondent and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ellingson & Moe; Jon E. Ellingson, Missoula, Montana

    For Respondent:

        Paulette C. Ferguson, Missoula, Montana

---

Submitted on Briefs: Oct. 16, 1987

Decided: November 24, 1987

Filed: NOV 24 1987

*Ethel M. Harrison*
—————————————————————
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Francis O. Mitchell appeals the findings of fact, conclusions of law and judgment of the District Court, Fourth Judicial District, Missoula County, Montana determining child support and attorney fees. We reverse and remand for more accurate determination of the parties' income available for child support.

Francis and Carol Mitchell were married on July 19, 1969. The couple had two children, Timothy, born September 9, 1971, and Kathryn, born October 17, 1972. Francis is employed by the University of Alaska cooperative extension services in McGrath, Alaska. He holds a Masters degree in human behavior. Carol is an attorney in Missoula, Montana. She received a Juris Doctrate degree from the University of Montana in 1977 and has practiced law since that time.

In May 1977, Francis moved to Alaska and lived there through 1980. He was employed by the Iditarod Area School District and initially made $30,000 per year which increased to $36,000 by 1979. Except for a six-month period of time in 1977-1978, the children lived with Carol in Missoula. In 1980, Francis moved from Alaska to Moiese, Montana, where he was employed by the Confederated Salish and Kootenai Tribe at an annual salary of $20,000. Francis continued to travel back and forth between Alaska and Montana to complete contract work which provided some extra income, but maintained his domicile in Alaska.

Carol filed an action for dissolution in September of 1981, and a decree of dissolution was entered on October 8, 1981. The court, in its decree, reserved the division of property, child custody and support. Francis remained employed from October 1, 1982 to April 1983, as an alcohol

counselor at the Salish Kootenai College but became unemployed when the program was eliminated.

On June 10, 1983, the parties entered into a "Marital and Property Settlement Agreement and Release of Claims." After executing the agreement, Francis travelled back to Alaska for interviews with the University of Alaska and was hired on a three-quarter time basis at an annual salary of $42,881.

Following a hearing on October 26, 1984, the court ordered the adoption of the property settlement agreement except for the issue of child support. A hearing on child support was held December 20, 1984 in which the parties' income was thoroughly yet confusingly scrutinized. There was testimony given and evidence presented which showed amounts both parties paid for support of their children.

Evidence was presented which showed Francis was employed at an annual salary of $42,881 but it was unclear as to what salary Carol claimed. In response to answers to interrogatories, Carol stated her income for 1984 through October was $23,450. At the hearing, she testified that it was $21,850 plus $3,500 which she received from the partnership in November and December. For the years 1981, '82 and '83, she stated her income varied between $2,000-$4,000 from these figures. On July 11, 1985, after the case had been taken under advisement but no order had been issued, Carol filed an affidavit of her accountant which stated Carol's 1984 income as $11,749. Francis objected to this entry and the court ordered the taking of the accountant's deposition on January 16, 1986 at Francis' expense.

The trial judge rendered his ruling on February 27, 1987, twenty-six months after the hearing. The District Court concluded that no cost of living adjustment should be

3

made on Francis' Alaskan salary before comparing it to Carol's under Montana's Guidelines for Determining Child Support. Francis was ordered to pay $926.27 per month in child support, maintain a medical insurance policy for the children and have both children named as beneficiaries on a life insurance policy, pay the costs of private school tuition, and pay transportation costs for visitation. Francis was also ordered to pay Carol's attorney fees.

Francis appeals the District Court's findings of fact, conclusions of law and judgment on the following issues:

(1) Did the District Court abuse its discretion in making the child support award by miscalculating Carol's income and failing to properly apply the new Guidelines for Determining Child Support so that substantial injustice occurred?

(2) Did the District Court err in granting attorney fees?

(3) Was there improper admission of pre-divorce support history?

This Court recently adopted the Uniform District Court Rule On Child Support Guidelines (Mont. 1987), 44 St.Rep. 828 (Guidelines). The Guidelines are a suggested procedure for the determination of child support. Although the Guidelines are not expressly binding, when used by the District Court, all findings are reviewable. Absent a clear showing of abuse of discretion, the District Court will be upheld. Marriage of Ensign (Mont. 1987), 739 P.2d 479, 482, 44 St.Rep. 1146, 1149; In Re Marriage of Ryan (Mont. 1986), 720 P.2d 691, 693, 43 St.Rep. 1163, 1165. We find that the District Court abused its discretion in this case.

As to issue number one, Francis alleges error committed on the part of the trial court in calculating Carol's income. Francis argues that the court improperly permitted income

4

deductions for support determination solely because they are allowed tax deductions by the Internal Revenue Service.

The Guidelines contain a suggested work sheet that the District Court followed:

| 1. Gross Income | | Petitioner (Carol) | Respondent (Francis) |
|---|---|---|---|
| a) earnings. | 1983 | $32,857.00 | |
| | 1984 | 15,848.00 | $43,174.00 |
| | | $48,705.00 | |
| | 2-year average: | $24,352.50 | |
| b) imputed income. | | | |
| wood gathering/hunting | | | $4,800.00 |
| rental in Missoula | | | 3,000.00 |
| c) asset value | | | $8,325.60 |
| d) business loss | 1983 | $8,400.00 | |
| | 1984 | 4,099.00 | |
| | 2-year average: | ($6,249.50) | |
| TOTAL | | $18,103.00 | $59,299.60 |

| 2. Deductions | | | |
|---|---|---|---|
| a) taxes | | | |
| self-employment | 1983 | $4,964.00 | |
| | 1984 | 1,660.00 | |
| | | $6,624.00 | |
| | 2-year average: | 3,312.00 | |
| state & federal income taxes | | | |
| | 1983 | 223.00 | |
| | 1984 | 1,723.00 | $8,793.41 |
| | | 1,946.00 | |
| | 2-year average: | 973.00 | |
| b) mandatory retirement | | | $6,045.06 |
| c) medical insurance paid on behalf of children. (Respondent's Exihibt 6) | | | $1,874.00 |
| | | $4,285.00 | $16,712.47 |

3. Net Available Resources

| | Petitioner | Respondent |
|---|---|---|
| | $13,818.00 | $42,587.13 |

5

The gross income figure adopted by the court for Carol was for two years. The court found Carol made $32,857 in 1983, and $15,848 in 1984. The trial court added the '83 and '84 income figures for a total of $48,705 and then divided by two for a two-year average income of $24,352.50. The District Court stated in paragraph seven of its findings of fact that Carol was confused as to her income and that the affidavit and deposition testimony of her accountant was "[t]he more credible and reliable evidence . . . " of Carol's income.

The accountant, Tracy Blakeslee, submitted an affidavit and copies of Carol's tax return for 1984. The return showed net income of $15,848. Blakeslee then subtracted $2,939 for depreciation on P & C Rentals, $1,002 for partnership business expenses paid previously, and $158 for depreciation on a desk. This left Carol with an income of $11,749 for 1984. For 1983, there was a $5,276 depreciation loss claimed on P & C Rentals and a loss claim of $1,110 for exotic cats.

The court found that there was an average business loss of $6,249.50 ($8,400 for 1983 and $4,099 for 1984). Francis argues, and we agree, that these losses (with the exception of the $1,002 claimed for business expenses) although allowable for income tax deduction purposes, should not be used to calculate child support. Depreciation is a form of accounting which does not directly correlate to the amount of cash on hand of an individual. When analyzing income under the Guidelines, it is the disposable income of the parent, and not their income tax returns alone, which need be considered by the court.

6

The Colorado Legislature adopted similar Guidelines effective November 1, 1986. The former chairman of the Colorado Bar Association Family Law Section, Stephen J. Harhai, wrote an article focused on possible problems with those Guidelines. He states:

> For the non-wage earner, the Guidelines use a standard accounting definition of income: gross receipts less ordinary and necessary business expenses. Excluded from expenses are accelerated depreciation, the (now repealed) investment tax credit and any other expense the court deems inappropriate. (Emphasis added.)

Harhai, Key Issues in the Colorado Child Support Guidelines, 16 Colo. Lawyer, 51-52 (Jan., 1987).

Under the Colorado statute, "'ordinary and necessary expenses' does not include amounts allowable by the internal revenue service for the accelerated component of depreciation expenses . . . " See, Col.Rev.Stat. § 14-10-115(7) (a)(II)(B).

This Court deems that the claimed "legitimate business expenses" of depreciation, on the rental units for 1983 and 1984 and on the desk, plus the expense claimed for exotic cats both fall within excluded expenses in determination of child support.

The District Court should also reconsider the claimed $1,002 previous business expenses claimed by Carol on her 1984 returns to ensure that these are properly deductible. We do not hold that income tax returns are not a valuable tool in the determination of child support as suggested in Part 1 of the Guidelines, but the District Court has always been vested with discretion under the broad standards of § 40-4-204, MCA, which we feel requires scrutiny of all deductions and exemptions claimed by either parent.

We note also that in the District Court's determination as to imputed income and assets that further inquiry should occur upon remand. For Francis' gross income, the trial court imputes $4,800 for Francis' wood gathering and hunting and values his assets at $8,325.60. The assets include a $900 interest in a riverboat and motor, $900 in a snowmachine, $250 in a 3-wheeler, $800 in a stock trailer and $250 in a sled and trailer. This $3,100 should possibly be removed in the calculation of the assets value total because they are used in generating the imputed income from wood gathering, hunting and fishing.

Part 4, Assets as income, of the Guidelines states:

> [T]he assessment of assets should exclude from consideration such non-income and non-depreciable producing assets of "reasonable" value such as a permanent home, farm land, furnishings, and one automobile. Also excluded should be income producing assets such as real property in the form of a farm or business, vehicles, tools, or instruments used to produce a primary source of income. (Emphasis added.)

Francis' imputed income also includes $3,000 in rental income. We believe, as Carol argued, that this rental unit was Francis' cabin in Alaska, not Missoula as the order states. If this is the case, the minor error should be corrected.

Carol claims that if the District Court would have used the formula that this Court approved of in In Re the Marriage of Carlson (Mont. 1984), 693 P.2d 496, 41 St.Rep. 2419, that Francis would have received less than he did under the Guidelines. The Carlson formula, as we have previously stated, is only a suggested guideline and therefore is not binding in this case. Marriage of Ensign, supra, 739 P.2d at

8

482, 44 St.Rep. at 1149; In Re Marriage of DiPasquale (Mont. 1986), 716 P.2d 223, 226, 43 St.Rep. 557, 561.

We do, however, find Carlson helpful for two reasons. First, Carlson states the policy that the comparative earning figures of the parents "[m]ust realistically reflect what the parents are capable of earning using their actual earnings as a guideline." Carlson, supra, 693 P.2d at 500, 41 St.Rep. at 2423. Here, we do not believe that the figures presented and used by the District Court accurately reflect actual earnings.

Secondly, Carlson facilitates a determination of whether the court erred in granting attorney fees, appellant's second issue. The District Court found in its conclusions of law that Francis "[m]ust pay [Carol's] attorney fees in this action to modify the settlement agreement." Under paragraph XII of the agreement entered into by Carol and Francis on June 10, 1983, the parties agreed that in any action to "[e]nforce, modify or interpret this agreement, the court . . . shall award a reasonable attorney fee to the successful party."

It is clear that the parties contracted as to the child support of the Mitchell children in paragraph X of the agreement. Pursuant to § 40-4-201(2), MCA, this does not bind the parties.

> Carlson states the rule applicable to this situation:
>
> > In all divorce matters relating to children, the best interest of the children control. While terms of a contract may be introduced as evidence in some instances, the custody and support of children are never left to contract between the parties. (Emphasis added.)

9

Carlson, supra, 693 P.2d at 500, 43 St.Rep. at 2424; see also In re the Marriage of Neiss (Mont. 1987), ____ P.2d ____, ____, 44 St.Rep. 1695, 1697.

Additionally, on April 18, 1984, Carol moved for entry of a decree adopting the settlement agreement, but requested the court reserve the issue of child support for a later time. After a hearing on October 26, 1986, the District Court granted Carol's request and ordered the adoption of the agreement in all respects except for child support.

A review of the record shows the majority of subsequent litigation centered around determination of the parties' assets, liabilities and income for child support reasons. Even though Francis failed to promptly comply with discovery, the assessment of attorney fees was never directed to this noncompliance. The District Court stated Francis was forced to pay because the court had to "modify" the settlement agreement. Since most of the following litigation concerned the issue of child support, we find that the District Court abused its discretion in assessing attorney fees under the facts of this case.

The final issue raised is whether the court erred in permitting testimony of pre-divorce history. Francis claims that the testimony was irrelevant to the factors listed in § 40-4-204, MCA. That testimony dealt with where the children lived, housing costs, and a lack of a regular payment by Francis during the time he was in Alaska (specifically 1977).

It is true that the District Court is to consider all relevant factors without regard to marital misconduct in determining child support. Section 40-4-204(1), MCA. Carol points out though, that these factors may be considered if it aids in determination of "current child support issues." The

relevancy and possible prejudice of such testimony may be determined upon rehearing.

Francis additionally argued that the court erred in failing to adjust his income according to cost of living expenses in Alaska as compared to Montana. We neither bless this argument nor condemn it. The Guidelines do not specifically address whether cost of living in an area is a legitimate consideration. In appropriate cases, where there is evidence presented that shows there is substantial disparity between the value of the dollar in different locales, the court may in equity need to make appropriate adjustments.

We remand this case to the District Court for a proper determination of the parties' income and assets and for more accurate and equitable application of the Child Support Guidelines.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John Conway Harrison, specially concurring.

I concur.  As noted in majority the opinion, I wish to focus attention to the fact that this matter commenced some seven years ago, September of 1981, with the filing of the action for dissolution.  Even after numerous hearings, no opinion was rendered by the trial judge for some twenty-six months after the hearings.  In this state, litigants are entitled to have litigation handled in a more expeditious manner--this case does not evidence that fact.  It is my firm hope that by calling attention to this factor, the judiciary of this state will check their calendars and resolve cases faster, this case is not a good example of  handling cases in a timely fashion.

Under the circumstances of this case, we have a litigant in the state of Alaska where the cost of living is far above that in Montana.  The trial judge must adjust the income of the parties according to a cost of living, in this case the person to pay, the husband.

_____
Justice

12