Charlotte C. TURNER, Petitioner
Below–Appellant,

v.

Wade R. TURNER, Respondent
Below–Appellee.

Supreme Court of Delaware.

Submitted: Oct. 23, 1990.
Decided: Feb. 19, 1991.

David J. Ferry, Jr. and Kenneth E. Fink,
Ferry and Fink, Wilmington, for appellant.

H. Alfred Tarrant, Jr. and Thomas D.
Shellenberger, Cooch and Taylor, Wilmington, for appellee.

Before MOORE, WALSH and
HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from the Family Court
of the State of Delaware in and for New
Castle County. The Family Court ruled
that the child support obligation of the
respondent-appellee, Wade R. Turner ("Fa-

ther"),[1] should be calculated by using the Melson Formula. In this appeal, the petitioner-appellant Charlotte C. Turner ("Mother") contends that the Family Court erred in holding that she had not rebutted the presumptive applicability of the Melson Formula. Specifically, the Mother argues that, in the case *sub judice*, the mathematical result produced by the Melson Formula was inequitable, because the Family Court included the accelerated depreciation from the Father's tax returns as a "legitimate business expense" in computing his net income for child support purposes. The Mother also contends that the Family Court erred in denying her motion for attorney's fees. For the reasons hereinafter set forth, we reverse the decision of the Family Court and remand this matter for proceedings consistent with this opinion.

### Facts

The parties are the parents of John B. Turner ("John"), age twelve. The Father and Mother are divorced, pursuant to a decree entered October 15, 1985. John lives with his Mother. In August of 1986, the parties entered into a stipulated order which resolved certain ancillary matters incident to the divorce. As part of the stipulation, the Father agreed to pay the Mother $900.00 a month for alimony and $400.00 a month for child support. In addition, the Father agreed to pay directly for several of John's extraordinary expenses, including John's educational and medical expenses.

The stipulated order provided that alimony payments to the Mother would terminate on October 31, 1987. The stipulation also provided that as of November 1, 1987, the parties' respective child support obligations would be computed in accordance with the Melson Formula. After that date, the Father continued to pay child support in the amount of $400.00 per month to the Mother. The Father also continued to pay third parties directly for several of John's extraordinary expenses, including medical and educational expenses. Thus, following November 1, 1987, the Father's total child support payments were $1177.82 per month.

The Father is a florist who operates his own incorporated business. His 1988 tax returns indicate that he received $39,000.00 as salary from his business and $2000.00 in income for use of the company car, a 1986 Jaguar.[2] In addition to his automobile expenses, the company paid for other of the Father's personal expenses, amounting to approximately $1000.00 per year.

The Father owns the real estate on which his business is located. Situated on the real estate are greenhouses, garages, sheds and a home. The Father testified that the real estate and improvements were appraised at $559,000.00 in March, 1986 and have not depreciated since that date. The business structures are rented by the Father to his corporation at a gross rental of $90,000.00 per year. The rental business expenses which appear on the Father's 1988 personal tax returns were $113,867.00 in total. Thus, for tax purposes, the Father's rental business resulted in a loss of $23,867.00.

Depreciation represented $45,520.00 of the business expenses which the Father deducted on his income tax returns. The expert testimony before the trial judge reflected that greenhouses have an average useful life of thirty-five to forty years, but depreciate on their own schedule for tax purposes. According to the Father's expert witness, generally accepted accounting principles permitted the Father to use a ten-year depreciation period in preparing his tax returns. This resulted in substantially all of the $45,520.00 which the Father deducted for depreciation on his personal income tax returns.

The Mother is a high school graduate. She is employed as a secretary. Her annual net income for tax purposes is approximately $18,200.00.

---

1. Pursuant to Supreme Court Rule 7(c), pseudonyms have been used instead of the actual names of the parties.

2. The Father testified that fifteen percent of the use of the Jaguar was personal rather than business. The $2000.00 reflected on his tax returns as income represented that fifteen percent personal use.

## Master's Recommendation

On August 24, 1988, the Mother filed a modification petition for the purpose of increasing the Father's monthly child support payments. The parties initially appeared before a Master of the Family Court. The parties agreed that any calculation of the Father's child support obligation must be made pursuant to the Melson Formula. Not only was this provided for in the stipulated order but, even in the absence of such an agreement, the Melson Formula is applicable as a rebuttable presumption for the purpose of determining child support in Delaware. *Dalton v. Clanton,* Del.Supr., 559 A.2d 1197 (1989).

The Melson Formula determines the appropriate child support obligation based, in part, upon the respective net incomes of the parties. In calculating net income, the Melson Formula permits deductions for all "legitimate business expenses." The Master acknowledged that accelerated depreciation is generally considered a legitimate business expense. However, the Master also recognized that since the Melson Formula operates as a rebuttable presumption, if the mathematical result which is the product of the Melson Formula is inequitable, the presumption is rebutted. *Id.* at 1211.

In this case, the Melson Formula calculation (*including* accelerated depreciation as a legitimate business expense) would have resulted in a substantial reduction of the Father's existing child support payments, despite John's undisputed ordinary and extraordinary needs. The Master determined that the presumptive applicability of the mathematical result produced by the Melson Formula had been rebutted by the equities presented. The Master attributed the inequitable result to the inclusion of accelerated depreciation in the Melson Formula as a "legitimate business expense." The Master concluded that it was equitable, for the purposes of calculating the Father's child support obligation, to correlate the Father's net income with his net disposable income or "cash flow," i.e., $4,765.92 per month. This figure was based upon the net income reported on the Father's personal tax returns, allowing all federal tax deductions, but *excluding* any accelerated depreciation expense.

The Master recommended that the Father be ordered to pay child support of $1352.29 per month retroactive to November 1, 1987. (Appendix I). The Master also recommended that the Father be ordered to pay the Mother's attorney's fees and costs. The Father filed for a review *de novo* of the Master's recommendations by a judge of the Family Court. 10 *Del.C.* § 913(c).

## Review De Novo by Family Court Judge

A hearing was held before a judge of the Family Court. Testimony was presented on behalf of both parties. The trial judge opined that this Court had previously construed the term "legitimate business expense," as a component of the Melson Formula, to be synonymous with all business expenses which were allowable for income tax purposes. Therefore, the trial judge held that the Master had erred as a matter of law, in applying the Melson Formula, by excluding accelerated depreciation as a legitimate business expense in computing the Father's net income. Consequently, the trial judge declined to follow the Master's recommendation. The trial judge instructed the Father's attorney to prepare a calculation for child support payments, *by applying the Melson Formula, in accordance with his decision.*

The Father's attorney prepared a proposed child support calculation. In that computation, the Father's income was identified as: his salary from the business, $39,000.00; his personal expenses paid by the business, $1000.00; his personal use of the company Jaguar, $2,000.00; and $224.00 in interest and refunds. These figures attributed a gross annual income of $42,224.00 to the Father. After taxes were subtracted, the Father's monthly net income for child support purposes was $2344.27. John's needs were calculated by adding the basic monthly allowance for food and clothing, which is provided for in the Melson Formula, to John's undisputed

extraordinary educational and medical expenses. In accordance with the Melson Formula, the Father's attorney determined the proper percentage of the Father's contribution to John's support, and made a standard of living adjustment (SOLA). The Father's attorney arrived at $870.29 as the proper monthly amount of child support for the Father to pay.[3] (Appendix II).

At this time, it is important to note how the calculation by the Father's attorney treated the Father's rental business income and expenses, especially accelerated depreciation. Since the net effect of the rental business was an annual loss of $23,867.00 for tax purposes, if the Father's attorney had included *all* of the Father's business income and expenses in the Melson Formula computation, it would have reduced the Father's annual net income accordingly. However, the calculation by the Father's attorney reflects a neutralization of the Father's business income and expenses. By disregarding the rental business loss of $23,867.00 in applying the Melson Formula, in effect, the Father only deducted $21,653.00 of the accelerated depreciation as a "legitimate business expense," rather than all of the $45,520.00 in accelerated depreciation which he had deducted on his personal income tax return. Thus, the Father did not use the same magnitude of accelerated depreciation to arrive at his net income for child support purposes that he had used for income tax purposes.

Without commenting on the Father's decision not to deduct the entire $45,520 of accelerated depreciation, even though he had ruled that it was a "legitimate business expense" within the terms of the Melson Formula, the trial judge entered an order which adopted the computation by the Father's attorney *in toto*. On January 19, 1990, the Family Court ordered the Father to pay child support of $870.29 per month, retroactive to November 1, 1987, and further ordered that the Father should be credited for the overpayments made to the Mother and third parties on John's behalf during that period.

■ Consequently, despite John's undisputed ordinary and extraordinary needs, the Mother's modification petition for an increase in monthly child support resulted in a decrease of approximately $308.00 per month in the Father's child support obligation. The difference between the Family Court's order and the Master's recommendation was almost entirely attributable to the Master's inclusion of the Father's entire rental income and expenses within the Melson Formula computation, excluding *any* accelerated depreciation.[4] Since the Mother's petition for a modification resulted in a retroactive decrease of the Father's monthly child support obligation, the Mother's motion for attorney's fees was denied by the judge of the Family Court.

### Melson Formula Generally

The procedure for calculating child support used by the Family Court is the Melson Formula. *Dalton v. Clanton*, 559 A.2d at 1210. This Court has recognized the validity of that procedure. *Id. See also Kenton v. Kenton*, Del.Supr., 571 A.2d 778, 782 (1990). The *basic principles* of the Melson Formula have been summarized as follows:

> Parents are entitled to keep sufficient income to meet their most basic needs in

---

**3.** It was suggested that the Father discharge his child support obligation as follows:

$ 92.47 directly to the Mother;
$541.66 to the private school for tuition;
$108.33 to the school for after-school care;
$108.33 payable to the tutor;
$ 19.50 to the child's physician for allergy shots.
───────
$870.29 TOTAL

**4.** A portion of the difference between the Master's recommendation and the trial judge's order also related to the income imputed to the Father

for his use of the company Jaguar. The Melson Formula's definition of net income includes expenditures by a business for benefits which the employee would otherwise have to 'provide' for himself. *R.T. v. R.T.*, Del.Supr., 494 A.2d 150, 154 (1985). Thus, it was appropriate to attribute some income to the Father for his personal use of the company Jaguar. If the amount of income to be attributed for the Father's personal use of the company automobile continues to be disputed by the parties, it can be re-examined by the Family Court when this case is remanded.

order to encourage continued employment.

Until the basic needs of children are met, parents should not be permitted to retain any more income than that required to provide the bare necessities for their own self-support.

Where income is sufficient to cover the basic needs of parents and all dependents, children are entitled to share in any additional income so that they can benefit from the absent parent's higher standard of living.

*Dalton v. Clanton*, 559 A.2d at 1203. The *basic procedures* which are performed in an application of the Melson Formula are:

Step 1: *Determine Available Income of Each Parent.* The Melson Formula starts with net income. After determining net income for each parent, a self-support reserve ("primary support allowance") is subtracted from each parent's income. This reserve represents the minimum amount required for an adult to meet his or her own subsistence requirements.

Step 2: *Determine Childrens' Primary Support Needs.* The next step in applying the formula is to compute the primary support amount for each dependent. Like the self-support reserve, the primary support amount represents the minimum amount required to maintain a child at a subsistence level.... Work-related child care expenses are added to primary support as are extraordinary medical expenses.

The child's primary support needs are pro-rated between the parents based upon available net income as determined in Step 1....

Step 3: *Determine Standard of Living Allowance (SOLA).* After primary support obligations of each parent are calculated in Step 2, including obligations for child care expenses and extraordinary medical expenses, a percentage of remaining income is also allocated to support of the child. The standard of living allowance enables the child to benefit from the higher living standard of a parent.... If a parent has dependents oth-

er than the child for whom support is being sought, and such other dependents are not covered by a court order, primary support amounts for such dependents are deducted from obligor income available for the Standard of Living Allowance. *Dalton v. Clanton*, 559 A.2d at 1203–1204.

In this case, John's primary support needs and extraordinary expenses are not in dispute (Step 2). The issue which must initially be resolved is how to properly determine the Father's net income (Step 1). The resolution of that question has a direct impact on the standard of living adjustment (Step 3).

### Melson Formula Determination of Net Income

∎ "The first step of the Melson Formula requires the Family Court to determine each support obligor's net income." *Kenton v. Kenton*, 571 A.2d at 782. For the purpose of computing child support according to the Melson Formula, net income is determined as follows:

1. DETERMINE EACH SUPPORT OBLIGOR'S NET INCOME. Add:

a. *Income from employment, as well as all other sources* (such as pensions, dividends, interest, etc.); and

b. Business expense accounts to the extent that they provide the support obligor with something he would otherwise have to provide (such as automobile, lunches, etc.).

Subtract:

a. Income taxes figured on the basis of the maximum allowable exemptions;

b. Other deductions required by law, including attachments and child support payments made pursuant to Court order or written separation agreement;

c. Deductions required by the employer, or the union, except credit union payments;

d. *Legitimate business expenses*;

e. Benefits such as hospitalization insurance which are maintained for the obligor's dependents.

*Dalton v. Clanton*, 559 A.2d at 1213 (emphasis added). This Court has previously held that the issue of what constitutes a

legitimate business expense, as that term is used in the Melson Formula, should *usually* be determined by generally accepted accounting principles. *R.T. v. R.T.*, 494 A.2d at 155. However, the conclusion that generally accepted accounting principles recognize a particular item as a legitimate business expense, is not *dispositive* of whether the Family Court should always ultimately deduct it from the income component in Step 1 of the Melson Formula's equation. *Id.*

■ The Melson Formula operates as a rebuttable presumption in calculating child support in Delaware. *Dalton v. Clanton*, 559 A.2d at 1211. "As a rebuttable presumption, the Delaware procedure provides for a uniform approach to child support decisions, unless the Family Court is persuaded that an application of the Melson Formula would be inequitable." *Id.* (citation omitted).

> The mathematical result which is the product of the Melson Formula can never be the basis of a child support order under the Delaware procedure, until that result passes the litmus test of the rebuttable presumption. When the calculation according to the Melson Formula is mixed together with the specific facts in a case, the result must be equitable. If the result is inequitable, the presumption is rebutted, and the support calculation pursuant to the Melson Formula must yield to the extent that is necessary to balance the equities in the case.

*Id.* at 1212.

### Melson Formula Generally Accepted Accounting Principles

■ This Court has specifically acknowledged that the Family Court is not *bound* by generally accepted accounting principles which apply under tax law, if the mathematical result which is produced by the Melson Formula, when those accounting principles are applied, is inequitable. *R.T. v. R.T.*, 494 A.2d at 153. The state and federal tax laws are concerned with calculating each taxpayer's net income so that a uniform tax may be assessed. *Id.* at 154. The Delaware child support statutes, as implemented by the Melson Formula, are concerned with calculating a net income figure for each parent, so that a fair amount of child support may be assessed. *Id.* When the two approaches to net income conflict, the Family Court may depart from tax law accounting if, *but only if,* that departure is reasonable, fair, and practical under all of the circumstances. *R.T. v. R.T.*, 494 A.2d at 155. *See* 13 *Del.C.* § 514(3).

This Court has acknowledged that since depreciation is considered by generally accepted accounting principles to be an expense in determining net taxable income, it *may* also be a legitimate business expense for the purpose of computing the amount of net income which is available for child support, pursuant to the Melson Formula. *R.T. v. R.T.*, 494 A.2d at 155. The concept of depreciation, as an expense, is a recognition of the fact that certain fixed assets, which are used in a business, wear out gradually and will eventually need to be replaced. *Id.* The simplest form of this concept is known as straight line depreciation. If straight line depreciation is used, the difference between the original cost of an asset and its scrap value is divided by the asset's estimated useful life. The quotient is treated as the annual depreciation "expense." However, in addition to straight line depreciation, generally accepted accounting principles recognize several methods of accelerated depreciation for tax purposes, e.g., the sum of the years digits method and the declining balance method. *See* R.W. Hamilton, *Fundamentals of Modern Business* (Little, Brown and Company 1989). The accelerated methods of depreciation permit larger deductions, for tax purposes, in the early years of an asset's life. *Id.*

### Melson Formula's Mathematical Calculation Accelerated Depreciation Rebuts Presumptive Applicability

■ The accelerated depreciation which is at issue in this case provides a model for illustrating the equitable operation of the Melson Formula as a rebuttable presumption. Because accelerated depreciation is recognized by generally accepted account-

ing principles, *prima facie*, it should be included as a legitimate business expense when the Melson Formula is used to calculate child support. *R.T. v. R.T.*, 494 A.2d at 155. However, the mathematical result which is produced by the Melson Formula, when accelerated depreciation is included as a legitimate business expense, must then be examined in the context of the specific facts. *Dalton v. Clanton*, 559 A.2d at 1212. "If the result is inequitable, the presumption is rebutted, and the support calculation pursuant to the Melson Formula must yield to the extent that is necessary to balance the equities in the case." *Id.*

■ In this case, the Master concluded that it was inequitable to calculate the Father's child support payments upon the basis of the mathematical result which was produced by the Melson Formula. The Master attributed that inequity to the Melson Formula's *prima facie* reliance upon the generally accepted accounting principle which permits a deduction for accelerated depreciation. Since the Melson Formula's mathematical calculation must yield to the extent which is necessary to balance the equities in this case, the Master concluded that this could be accomplished by not permitting the Father to deduct any accelerated depreciation as a legitimate business expense in Step 1. We agree.

■ Accelerated depreciation is a unique type of deduction. Although it is recognized by generally accepted accounting principles, the presumptive applicability of the mathematical result which is produced by the Melson Formula will *almost always be rebutted* when accelerated depreciation

is included in computing the amount of net income which is available for child support.[5] Since accelerated depreciation represents an expense which is unrelated to the useful life of an asset, it is also an expense which is unrelated to the actual business need to provide for the replacement of that asset. Moreover, accelerated depreciation is an expense which does not involve any expenditure of funds. Therefore, accelerated depreciation inevitably produces a distorted view of the real business demands upon a support obligor's current financial resources, when it is included as a legitimate expense in applying the Melson Formula.[6] Consequently, in such situations, this Court has concluded that the calculations as to child support payments may be based, in part, on an *equitable evaluation* of what is sometimes called net disposable income or "cash flow." *R.T. v. R.T.*, 494 A.2d at 154.

The manner in which the "cash flow" approach brought John's needs and the competing needs of the Father's business into equipoise is apparent from its effect on the operation of the Melson Formula's standard of living adjustment in Step 3. The inclusion of a standard of living adjustment within the Melson Formula is based upon the equitable predicate that, when there is sufficient income to cover the basic needs of the parents and all dependents, children are entitled to share in any "additional" income so that they can benefit from the noncustodial parent's higher standard of living. Thus, the standard of living adjustment is made within the Melson Formula only after a self-support reserve has been allocated to the noncustodial parent.

---

5. Several states have also recognized the unique nature of accelerated depreciation in child support matters. Some states, which have statutory child support guidelines, have specifically provided that accelerated depreciation is not an expense which should ever be recognized in determining the amount of net income which is available to pay child support. *See e.g.,* Colo. Rev.Stat. § 14–10–115(7)(a)(II)(B) ("[o]rdinary and necessary expenses" does not include amounts allowable by the internal revenue service for the accelerated component of depreciation expenses...."). Other states have reached a similar conclusion judicially, e.g., the Supreme Court of Montana held that accelerated

depreciation should be excluded as a "legitimate business expense" in determining net income for child support purposes. *In Re the Marriage of Mitchell,* Mont.Supr., 229 Mont. 242, 746 P.2d 598, 602 (1987). *See also Stewart v. Stewart,* Mont.Supr., 243 Mont. 180, 793 P.2d 813 (1990).

6. This phenomenon was noted in the October 11, 1989 report to the judges of the Family Court by the committee which had been appointed to review and make recommendations with respect to Delaware's child support formula (Melson Formula).

In performing the mathematical computations of the Melson Formula, the standard of living adjustment generally means that fifteen percent of the noncustodial parent's "additional" net income will go toward child support payments. Eighty-five percent of that "additional" net income is left with the noncustodial parent.

In this case, when accelerated depreciation was excluded as a legitimate business expense by the Master, the Father's net (disposable) monthly income was determined to be $4,765.92. After deducting an allowance for the Father's self-support needs and his proportionate share of John's primary support needs, the Father's "additional" net income was $3,486.62. The Melson Formula considers this latter amount as "available" for the standard of living adjustment. When the usual fifteen percent standard of living adjustment was made by the Master in this case, it resulted in an allocation of $522.99 from the "additional monthly income" for John, and a total monthly child support payment of $1,352.29. Consequently, the "cash flow" approach left $2,963.63 per month from the "additional" net income with the Father.

■ The record reflects that the Master properly concluded that a "cash flow" evaluation would result in a balancing of the equities in this case. When the Father's child support was calculated without an allowance for any accelerated depreciation, it did not mean that all or even substantially all of his net cash flow would be transferred to child support payments, thereby leading to the eventual ruin of the Father's business by eliminating his ability to replace the greenhouses it needed. *R.T. v. R.T.*, 494 A.2d at 155. At the same time, the "cash flow" approach resulted in a substantial positive increase in the child support benefits which John would receive.

The trial judge of the Family Court declined to follow the Master's recommenda-tion in the case *sub judice.* The trial judge ruled that since the term legitimate business expense in the Melson Formula was synonymous with any expense allowed by generally accepted accounting principles for tax purposes, those accounting principles could never be the basis for finding that the mathematical result which they produced was inequitable. Accordingly, the trial judge ordered that the Father's child support obligation should be based upon the mathematical result produced by the Melson Formula, with all of the Father's accelerated depreciation included as a legitimate business expense.

The ruling by the trial judge was clearly based upon a misunderstanding of this Court's prior precedents. Even the Father and his attorney recognized that the mathematical result produced by the Melson Formula, with a full deduction for accelerated depreciation, would result in an inequitable child support award. Thus, the Father included only approximately one-half of his accelerated depreciation as a legitimate business expense in his proposed child support calculation.[7]

When the Father's computation was adopted by the Family Court, the result was an order which departed from the Melson Formula, and to that extent its own prior ruling, without explanation. Thus, the Family Court's child support order was not only inequitable, but because it was inconsistent with its prior ruling without any explanation, it was not the product of a logical deductive process. Accordingly, it must be reversed.

### Attorney's Fees

The Mother's final contention is that the judge of the Family Court erred in denying her motion for attorney's fees. *Kenton v. Kenton*, 571 A.2d at 784 (citations omitted). The record reflects that the trial judge's decision not to award the Mother attorney's

---

7. When the Father's proposed child support calculation was submitted to the trial judge by the Father's attorney, it included the following notation: "In arriving at this total, depreciation on business structures has been deducted only to the extent necessary to eliminate any profit on rental. Thus no loss has been factored into the calculation although this would technically have been permitted by the [Family] Court's ruling." The Father and his attorney are to be commended to the extent they recognized *sua sponte* that it would be inequitable to deduct all of the Father's depreciation as a legitimate business expense.

fees was related, in part, to the prior decision that the Father's child support obligation should be reduced retroactively. *Id.* Accordingly, when this matter is remanded to the Family Court, for the purpose of properly recalculating the Father's child support obligation, the Family Court is also directed to reconsider the Mother's motion for an award of attorney's fees.

*Conclusion*

The decision of the Family Court, which resulted in the retroactive reduction of the Father's child support obligation, is REVERSED. This matter is REMANDED for further proceedings consistent with this opinion.

Form 509
(Rev. 12/86)

APPENDIX I
MASTER'S RECOMMENDATION

# The Family Court of the State of Delaware

FOR ____ NEW CASTLE ___ KENT ____ SUSSEX COUNTY

CHILD SUPPORT CALCULATION

(____) PETITIONER                          (____) RESPONDENT

CASE NAME:  Turner v. Turner                          DATE:

FILE NUMBER:

PART I.  PRIMARY CHILD SUPPORT

STEP A

|  | FATHER | MOTHER | TOTAL |
|---|---|---|---|
| Monthly Net Income | $ 4,765.92 | $ 1,190.43 | |
| Less Self Support | - 450.00 | - 450.00 | |
| Sub-totals | $ 4,315.92 | $ 740.43 | |

=AVAILABLE NET FOR PRIMARY SUPPORT- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - $5,056.3:

STEP B

| ____, as 2 person in ___ M ___'s household | $ 180.00 |
| +____, as ____ person in ____'s household | +____ |
| +____, as ____ person in ____'s household | +____ |
| Sub-total | $____ |

+ MONTHLY CHILD CARE EXPENSES OF WORKING CUSTODIAL PARENT- - - - - - - - - - - - - - - - - - - - +____
+ EXTRAORDINARY MEDICAL EXPENSES- and educational expenses . . . . . . . . . . . . . . . . + 795.65
Less EARNINGS OF A DEPENDENT CHILD- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -____
= TOTAL PRIMARY CHILD SUPPORT NEED- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - $ 975.65

TOTAL

STEP C

|  | FATHER | MOTHER |
|---|---|---|
| Individual Available net | $ 4,315.92 | $____ |
| ÷ Total Available Net | ÷ 5,056.35 | ÷____ |
| = Share of Primary Support | 85% | ____$ |
| x Primary Child Support Need | x 975.65 | x____ |
| = PRIMARY SUPPORT OBLIGATION | $ 829.30 | $____ |

PART II.  STANDARD OF LIVING ADJUSTMENT (SOLA) CHILD SUPPORT

STEP A

|  | FATHER | MOTHER |
|---|---|---|
| Available Net for Primary Support | $ 4,315.92 | $____ |
| Less Primary Support Obligations | - 829.30 | -____ |
| Sub-totals | $ 3,486.62 | $____ |

STEP B

|  | FATHER | MOTHER |
|---|---|---|
| Available Net for SOLA Support | $ 3,486.62 | $____ |
| x Total SOLA Support Percentage | x 15% | x____$ |
| Sub-Total (Products) | $ 522.99 | $____ |

= SOLA SUPPORT OBLIGATION- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -$____

STEP C

PER-CHILD SHARE OF SOLA SUPPORT- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - $____

(CHILD SUPPORT CALCULATION, Continued _____ Page 2

PART III. TOTAL MONTHLY SUPPORT OBLIGATIONS

|  | FATHER | MOTHER |
|---|---|---|
| Primary Support | $ 829.30 | $_____ |
| + SOLA Support | + 522.99 | +_____ |
| = Total Monthly Child Support Obligation | | |
| Sub-totals | $1,352.29 | $_____ |
| Less Amount Retained by Custodial Parent | -_____ | -_____ |
| = TOTAL MONTHLY ORDERED CHILD SUPPORT | $1,352.29 | $_____ |

PART IV. OPTIONAL SUPPLEMENTAL QUARTERLY CHILD SUPPORT

The Family Court has the authority to order a parent to pay quarterly child support directly to a child and custodial parent jointly. These payments are designed to relieve the custodial parent of periodic child-related expenses and to make the child aware of support received for his/her benefit from the other parent. Such payments may be awarded by the Court where the amount of monthly child support derived in accordance with the Child Support Calculation is inequitable in light of the relative financial standings of the parties at bar.

September 1 $_____    December 1 $_____    March 1 $_____    June 1 $_____

= TOTAL ANNUAL SUPPLEMENTAL CHILD SUPPORT                                    $_____
                                                                              TOTAL

Rule 52(c) and (d)

( ) PETITIONER                    ( ) RESPONDENT

The Child Support Calculation completed above shall be the party's proposed Order.

If a party is requesting the Court either to modify the normal formula or to find the formula inequitable in light of 13 Del.C. §505 (b) and/or 13 Del.C. §514, detail below:

(a)   Proposed Findings;

(b)   Proposed Conclusions;

(c)   Proposed Reasons;

(d)   Proposed Order;

CASE NAME:
FILE NUMBER:
DATE:

APPENDIX II
FATHER'S PROPOSED CALCULATIONS

THE FAMILY COURT OF THE STATE OF DELAWARE

CHILD SUPPORT CALCULATION

## PART I.  PRIMARY CHILD SUPPORT

### STEP A

| | FATHER | MOTHER | TOTAL |
|---|---|---|---|
| Monthly Net Income | $ 2344 | $ 1188 | |
| Less Self Support | - 450 | - 450 | |
| Sub-totals | $ 1894 | $ 738 | |

• AVAILABLE NET FOR PRIMARY SUPPORT . . . . . . . . . . . . . . . . . . . . . . $ 2632

### STEP B

_____Troy_____, as ___2nd___ person in ___mother___'s household   $ 180

♦_____, as _____ person in _____'s household   ♦_____

♦_____, as _____ person in _____'s household   ♦_____

Friend's School Tuition   $ 541.66

♦ ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~ Tutoring . . . . . . . . . ♦ 108.33

♦ EXTRAORDINARY MEDICAL EXPENSES . . . . . . . . . . . . . . . . . . . ♦ 19.50

~~XXXXXXXXXXXXXXXXXXXXXXXXXXX~~ After-School Care . . . . . . . . - 108.33

• TOTAL PRIMARY CHILD SUPPORT NEED . . . . . . . . . . . . . . . . . . . $ 957.82
TOTAL

### STEP C

| | FATHER | MOTHER |
|---|---|---|
| Individual Available Net | $ 1894 | $_____ |
| • Total Available Net | ÷ 2632 | ÷_____ |
| • Share of Primary Support | 72  % | _____ % |
| x Primary Child Support Need | x 957.82 | x_____ |
| = PRIMARY SUPPORT OBLIGATION | $ 689.63 | $_____ |

## PART II.  STANDARD OF LIVING ADJUSTMENT (SOLA) CHILD SUPPORT

### STEP A

| | FATHER | MOTHER |
|---|---|---|
| Available Net for Primary Support | $ 1894 | $_____ |
| Less Primary Support Obligations | - 689.63 | -_____ |
| Sub-totals | $ 1204.37 | $_____ |

### STEP B

| | FATHER | MOTHER |
|---|---|---|
| Available Net for SOLA Support | $ 1204.37 | $_____ |
| x Total SOLA Support Percentage | x 15 % | x_____ % |
| Sub-totals (Products) | $ 180.66 | $_____ |

• SOLA SUPPORT OBLIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

### STEP C

PER-CHILD SHARE OF SOLA SUPPORT . . . . . . . . . . . . . . . . . . . . . $_____

Over-------------

(CHILD SUPPORT CALCULATION, Continued) _____ Page 2

PART III. TOTAL MONTHLY SUPPORT OBLIGATIONS

| | FATHER | MOTHER |
|---|---|---|
| Primary Support | $ 689.63 | $_____ |
| + SOLA Support | $ 180.66 | $_____ |
| = Total Monthly Child Support Obligation Sub-totals | $ 870.29 | $_____ |
| Less Amount Retained by Custodial Parent * | − 777.82 | −_____ |
| = TOTAL MONTHLY ORDERED CHILD SUPPORT | $ 92.47 | $_____ |

PART VI. OPTIONAL SUPPLEMENTAL QUARTERLY CHILD SUPPORT

The Family Court has the authority to order a parent to pay quarterly child support directly to a child and custodial parent jointly. These payments are designed to relieve the custodial parent of periodic child-related expenses and to make the child aware of support received for his/her benefit from the other parent. Such payments may be awarded by the Court where the amount of monthly child support derived in accordance with the Melson Formula is inequitable in light of the relative financial standings of the parties at bar.

September 1 $_____    December 1 $_____    March 1 $_____    June 1 $_____

= TOTAL ANNUAL SUPPLEMENTAL CHILD SUPPORT                      $_____
                                                                  TOTAL

---

RULE 271. PROPOSED FINDINGS, CONCLUSIONS, AND REASONS

( ) PETITIONER                    ( ) RESPONDENT

The Child Support Calculation completed above shall be the party's proposed Order.

If a party is requesting the Court either to modify the normal formula or to find the formula inequitable in light of 13 Del.C. § 505 (b) and/or 13 Del.C. § 514, detail below:

(a) Proposed Findings:

(b) Proposed Conclusions:

(c) Proposed Reasons:

(d) Proposed Order:

* Father pays directly tuition, tutoring, after-school care and allergy shots.

CALCULATION OF ARREARAGES/CREDITS

1. $ 870.29 - father's monthly obligation
2. $ 400.00 - monthly cash paid to mother
   $ 541.66 - monthly tuition paid to Friend's School
   $ 108.33 - monthly tutoring paid to tutor
   $ 108.33 - monthly after-school care paid to Friend's School
   $  19.50 - allergy shot costs paid directly to doctor

   ─────────
   $1,177.82 - father's actual monthly payments
3. Overpayment/credit per month = $307.53 ($1,177.82 - $870.29)