No. 92-365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE CUSTODY OF J.M.D.,
A Minor Child

KEVIN J. FITZGERALD,

Petitioner and Respondent,

v.

EVA MARIE BROWN,

Respondent and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Joan Meyer Nye, Nye & Meyer,
Billings, Montana

For Respondent:

John Bobinski, Attorney at Law,
Helena, Montana

**FILED**

Filed:   JUL 2 9 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   February 4, 1993

Decided:   July 29, 1993

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Eva Marie Brown appeals from two orders of the District Court for the First Judicial District, Lewis and Clark County. In its first order, entered on May 19, 1992, the court determined that it was in the best interest of the parties' child to transfer custody to the father, Kevin Fitzgerald. In its second order, entered on July 13, 1992, the court denied Eva's motion to alter or amend the May 19, 1992, order, and her motion for a new trial. We affirm.

There are five issues on appeal.

1. Did the District Court abuse its discretion when it awarded custody in accordance with the parties' written stipulation?

2. Did the District Court err when it awarded sole custody to Kevin?

3. Did the District Court err by not requiring sufficient input from the child's court-appointed attorney?

4. Did the District Court err when it held the hearing on Kevin's motion to compel on April 2, 1992?

5. Did the District Court err when it denied Eva's request for a new trial after the May 19, 1992, order?

Eva Brown and Kevin Fitzgerald lived together in Helena, Montana, for approximately four years. They gave birth to one son, Joey, on December 22, 1989. Approximately four months after Joey's birth, the parties separated. In September 1990, Eva and Joey

2

moved to Billings. In March 1991, Kevin married Danette Fitzgerald. They reside in Helena.

In May 1990, Kevin filed a petition for custody and visitation and to determine child support. A trial was held before the District Court on November 1, 9, and 13, 1990, to determine the parties' custody and visitation rights. On December 4, 1990, the District Court made detailed findings of fact and conclusions of law. The court determined that both Kevin and Eva were fit parents and awarded them joint custody of Joey. Each parent was awarded residential custody on an alternating six-month basis. The court ordered Eva to have residential custody of Joey for the initial six-month period from January 1, 1991, through June 30, 1991.

Shortly before June 30, 1991, Eva filed a motion for a new trial or for an order modifying custody and visitation. Additionally, she filed a motion to stay the transfer of residential custody of Joey to Kevin. The District Court stayed the visitation schedule set forth in the December 4, 1990, decision, but ordered that Kevin be allowed visitation with Joey for a five-day period every other week pending further order of the court. At Eva's request, the court appointed an attorney, Randi Hood, to represent Joey's interests.

On November 15, 1991, a scheduling conference was held, and the District Court set a nonjury trial for March 5, 1992, to decide Eva's petition to stay the visitation schedule. However, on February 21, 1992, approximately two weeks prior to the scheduled

3

trial, the parties entered into a written agreement regarding custody and visitation of Joey, which they filed with the court on February 24, 1992.

In the written stipulation, the parties agreed to have Donna Hale, a licensed clinical social worker, prepare a custody evaluation to help determine what custody and visitation arrangements were in the best interest of the parties' child, Joey. The parties agreed that they would be bound by Hale's evaluation and recommendation, that the stipulation would settle all issues regarding child custody and visitation, and that the trial set for March 5, 1992, should be vacated.

The stipulation was drafted by Eva's attorney and signed by both parties. The attorney representing Joey also signed the stipulation. Pursuant to the parties' stipulation, the court vacated the trial.

Hale conducted a comprehensive custody evaluation of Eva, Kevin, and Kevin's wife, Danette. This assessment involved clinical interviews and clinical observations of Eva, Kevin, Danette, Joey, and Eva's and Kevin's step-children. Additionally, Hale administered tests to the adults, including The Custody Quotient and the Minnesota Multiphasic Personality Inventory. On February 24, 1992, Hale recommended that custody be transferred to Kevin and that Eva have liberal visitation. Hale recommended against joint custody, based on her opinion that Eva would not cooperate with joint custody responsibilities.

4

On March 23, 1992, Kevin filed a motion to compel and for custody, in addition to a notice of hearing on the motion. In response to Kevin's motion to compel, Eva filed a motion for additional evaluation and trial date on April 1, 1992. She argued that the court should not accept Hale's recommendation and enforce the parties' stipulation without a trial-type evidentiary hearing.

A hearing on Kevin's motion to compel was held on April 2, 1992. The entire proceeding was transcribed by a court reporter. The court first addressed Eva's request for an evidentiary hearing, and after discussing the issue with the parties, the court ordered Eva and Kevin to brief the legal issue of whether or not a trial-type evidentiary hearing was required to determine whether the stipulation was in the best interest of the child. The court stated that it would decide Eva's motion at a future date.

The court next addressed Kevin's motion. The court reviewed Hale's written evaluation and questioned Hale on the witness stand about her professional qualifications, her involvement with the case, her assessment of the parties, and her recommendation. The court also questioned Hood, the court-appointed attorney. Hood stated that she was aware that Hale had conducted an evaluation to make a custody recommendation and that it was acceptable to her. At the close of the hearing, the District Court entered a custody award in accordance with Hale's recommendation and transferred custody to Kevin.

After consideration of the parties' briefs and arguments on Eva's motion, the District Court issued an order on May 19, 1992, denying Eva's request for an evidentiary hearing. In that same order, the court permanently adopted Hale's recommendation and ordered, in writing, that custody of Joey be transferred to Kevin. Eva subsequently filed a motion to alter or amend and a motion for a new trial. On July 13, 1992, the District Court denied both of these motions. Eva appeals.

I

Did the District Court abuse its discretion when it awarded custody in accordance with the parties' written stipulation?

On appeal, Eva contends that it was error for the District Court to award custody pursuant to the parties' stipulation without conducting an evidentiary hearing to determine whether the written agreement was in the best interest of the child. Eva asserts that when the court adopted the custody recommendations of the evaluator, Hale, and denied her request for a more comprehensive evidentiary hearing, the court did not adequately consider the "best interest" of the child.

Section 40-4-201(2), MCA, provides that in dissolution proceedings, at least, stipulated terms regarding the custody, support, and visitation of a child are not binding on the court. *In re Marriage of Mitchell* (1987), 229 Mont. 242, 248, 746 P.2d 598, 603. "While terms of a contract may be introduced as evidence in some

6

instances, *the custody and support of children are never left to contract between the parties.*" *Mitchell*, 746 P.2d at 603 (quoting *In re Marriage of Carlson* (1984), 693 P.2d 496, 500, 214 Mont. 209, 217). This is because in all matters relating to children, the best interests of the children control. *Mitchell*, 746 P.2d at 603. To provide for the best interests of the children, courts must "carefully examine" the terms of a written agreement concerning custody. Commissioners' Note to § 40-4-201(2), Montana Code Annotated, Vol. 7, p. 90. Although in this case we are not concerned with a dissolution, the same considerations apply.

The court must consider the factors set forth in § 40-4-212, MCA, to ensure that the best interest of the child is provided for. The court is free to consider the parties' stipulation, however, ultimately the court must make an independent judgment regarding custody.

The standard of review in a child custody determination is well settled in Montana. The district court's findings will be sustained unless they are clearly erroneous. *In re Marriage of Susen* (1990), 242 Mont. 10, 13-14, 788 P.2d 332, 334. The trial court is in a better position than this Court to resolve child custody issues. The district court's decision is presumed correct and will be upheld unless a clear abuse of discretion is shown. *In re Marriage of Rolfe* (1985), 216 Mont. 39, 44, 699 P.2d 79, 82.

Based on our review of the record, we conclude that the District Court considered the best interest of the child when it made its final determination regarding the custody of Joey. The court "carefully examined" the parties' stipulation. The court determined that the parties knowingly and intelligently entered into an uncomplicated contract in which they agreed to be bound by Hale's recommendations. Furthermore, the court found that each party was fully represented by counsel when they signed the stipulation.

Next, the court considered Hale's evaluation and recommendation. In its order, the court determined that Hale is

> thoroughly familiar with the family, and has worked with them since the commencement of this action. She is in the best position, based on her profession, expertise, and familiarity with the family, to recommend an appropriate custodial arrangement that would be in the child's best interest.

Finally, the court made its own independent judgment. The District Court in this case had conducted a lengthy custody trial in November 1990 in which the court considered the factors set forth in § 40-4-212, MCA, and made appropriate findings. It also questioned Hale regarding her findings during the April 2, 1992, hearing and satisfied itself, as set forth in its May 19, 1992, order, that Hale's recommendation provided for Joey's best interest according to those factors to be considered under § 40-4-212, MCA.

Eva asserts that it was error for the District Court to enter an order determining custody based on the stipulation alone,

8

without an evidentiary hearing, without giving full consideration to the statutory criteria set forth in § 40-4-212, MCA, and without explicitly stating the determinative facts upon which the court's findings were based. Eva relies on our decision in *In re Marriage of Converse* (1992), 252 Mont. 67, 826 P.2d 937, to support her contention that she was entitled to an evidentiary hearing.

However, this case is distinguishable from *Converse*. In *Converse*, there was no trial and the court did not make findings which indicated the basis of the custody decision in relation to the statutory factors set forth in § 40-4-212, MCA. The parties agreed to a stipulation immediately prior to trial; however, when the agreement was finally reduced to writing, there was disagreement regarding its terms. The district judge adopted the stipulation anyway. On appeal, this Court reversed and remanded the case and ordered the lower court to conduct an evidentiary hearing, to consider the statutory factors required by § 40-4-212, MCA, and to make explicit findings which explained the basis of the court's custody decision.

Unlike the situation in *Converse*, where no custody trial was ever held and no explicit findings ever made by the court prior to its acceptance of the stipulation, the court in this case conducted a custody trial in November 1990. Following that trial, the court issued detailed findings of fact and conclusions of law which indicated that the lower court had considered the factors set out

9

in § 40-4-212, MCA. Unlike the court in *Converse*, the court in this case was in a position, based on the prior trial, to put Hale's custody evaluation in context and to make an independent judgment that the transfer of custody to Kevin was in the best interest of the child. Furthermore, there was no dispute regarding the parties' stipulation in this case. And finally, Hale was carefully questioned so that the District Court could independently determine that her recommendation satisfied the statutory criteria.

We hold that the District Court did not abuse its discretion when it entered a custody determination that was in accord with the stipulation and Hale's recommendation.

## II

Did the District Court err when it awarded sole custody to Kevin?

Eva argues that the District Court did not make any finding pursuant to § 40-4-224(1), MCA, that joint custody was not in the best interest of Joey, and therefore, the court erred when it awarded sole custody to Kevin. We disagree with Eva that the court did not make the requisite finding.

First, the court considered the evaluation and recommendations of the licensed clinical social worker, Hale. Hale determined that she could not recommend joint custody because: (1) the test she administered rated Eva's parenting skills as "defective" in numerous areas; (2) Eva made statements during the evaluation that

10

"she would not ever allow Joey to reside with Kevin;" and (3) it was Hale's opinion that Eva would not cooperate in joint custody responsibilities.

Then, after considering Hale's recommendation, the court made its own determination that it was in Joey's best interest to place him in his father's sole custody, giving Eva liberal visitation. We conclude that in its order entered on May 19, 1992, the District Court made the requisite finding, pursuant to 40-4-224(1), MCA, that joint custody was not in the best interest of Joey.

Moreover, § 40-4-224(3), MCA, provides that "[a]ny order for joint custody may be modified pursuant to § 40-4-219 to terminate the joint custody." Section 40-4-219(1), MCA, authorizes the district court to modify a prior custody decree if

> it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child and if it further finds that:

> (a) the custodian agrees to modification . . . .

Subsequent to the original custody decree, the parties engaged in a prolonged dispute regarding custody and were unable to settle their differences. They finally stipulated in a signed agreement that they would be bound by the recommendations of Hale. In doing so, each party consented to modify the original decree. Accordingly, the court did not err when it modified the prior joint

11

custody decree to award sole custody to Kevin. The court acted in accordance with § 40-4-219(1)(a), MCA.

## III

Did the District Court err by not requiring sufficient input from the child's court-appointed attorney?

Eva asserts that pursuant to § 40-6-110, MCA, the court was required to appoint a guardian ad litem to represent Joey's interests. Moreover, Eva contends that § 41-3-303(2), MCA, requires the guardian to conduct an investigation, to produce a report, and to provide a custody recommendation. Eva argues that Randi Hood, the attorney representing Joey in this case, did not conduct an investigation or produce the information required by § 41-3-303, MCA. She asserts that the court erred when it awarded custody without such information from the guardian ad litem.

Section 40-6-110, MCA, applies when paternity is at issue. This case is not a paternity action; it is a custody dispute. Neither does § 41-3-303(2), MCA, apply to this case. It applies to situations where a child has been alleged to be abused or neglected, and requires that a guardian be appointed to represent such a child. Section 40-4-205, MCA, governs this case. It is not a mandatory statute. It provides that the court may appoint an attorney to represent the interests of a minor child with respect to his support, custody, and visitation.

The court appointed Randi Hood as the attorney to represent Joey in this custody dispute. The parties and the court throughout

12

the custody proceedings in this case have referred to Hood as the guardian ad litem; however, as we pointed out in *Rolfe*, 699 P.2d at 86, in Montana, the attorney for the child in a custody dispute is not a guardian ad litem. As the child's attorney, Hood had a duty to represent Joey's best interest. *Rolfe*, 699 P.2d at 86.

Hood was present at the April 2, 1992, hearing. After the custody evaluator, Hale, testified, the court asked Hood if she had anything to offer concerning Hale's recommendation that custody be transferred to Kevin. Hood explained to the court that she was aware that Hale was conducting a custody assessment and recommendation, and that because of her previous experience with the expert, Hale, that was "fine" with her. Hood acknowledged to the court that she signed the parties' stipulation.

We conclude from the record that Hood fulfilled her legal duty to represent Joey's best interest. There was no statutory requirement that Hood, as Joey's attorney, conduct an investigation, produce a report, and provide a custody recommendation. Accordingly, we find that the court did not abuse its discretion when it made its award of custody without such specific information from Hood.

IV

Did the District Court err when it held the hearing on Kevin's motion to compel on April 2, 1992?

13

Kevin served his motion to compel on March 20, 1992, and pursuant to Rule 6(d), M.R.Civ.P., he filed an affidavit in support of his motion on the same date. Additionally, Kevin served a notice of hearing on March 20, 1992. All three of Kevin's documents were filed with the court on March 23, 1992.

Eva contends that she received Kevin's motion to compel on March 23, 1992, and therefore, according to Uniform District Court Rule 2(a), she had ten days to file a responsive brief. She contends that she had until April 6, 1992, to file her brief and that when Kevin set his motion for hearing on April 2, 1992, he set the hearing before Eva's time to respond expired. Eva asserts that she was provided with insufficient notice of the hearing on Kevin's motion, and therefore, it was error for the court to hold the hearing on April 2, 1992.

Eva concedes that Kevin satisfied the time requirements of Rule 6(d), M.R.Civ.P., but asserts that Rule 6(d) conflicts with Uniform District Court Rule 2(a), which allows the responding party ten days to submit a responsive brief.

According to Uniform District Court Rule 2(e), in the event of a conflict regarding the filing of motions and briefs, the Montana Rules of Civil Procedure shall control. Therefore, Rule 6(d) controls. Rule 6(d), M.R.Civ.P., provides that "[a] written motion . . . and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing . . . . " We conclude that when Kevin filed his motion and supporting affidavit

14

and notice on March 23, 1992, he complied with Rule 6(d), M.R.Civ.P. He provided Eva with at least five days notice of the hearing. Furthermore, both parties were given additional time for briefing following the hearing and no prejudice to Eva has been demonstrated from the shortness of notice.

V

Did the District Court err when it denied Eva's request for a new trial after the May 19, 1992, order?

Eva claims that the District Court should have allowed a new trial because Eva was "surprised" by Hale's recommendation. She asserts that Hale told her before the recommendation was written that she intended to recommend that Eva retain custody of Joey, and based on Hale's alleged comments, Eva claims that she signed the stipulation. Eva reasserts that *Converse* is applicable and that the District Court erred when it would not allow Eva the opportunity to present expert testimony and evidence to contradict Hale's evaluation and recommendation.

We reiterate that *Converse* is not applicable to this case. We conclude that the District Court did not abuse its discretion when it determined that it was in Joey's best interest to transfer custody to Kevin. The record reveals that the court listened to the parties' arguments, considered the parties' briefs, examined the stipulation, and gave serious consideration to the evaluation and recommendation of Hale. The record reveals that the court

15

exercised its independent judgement in its final custody determination, taking into consideration numerous factors, including evidence previously presented to the court over the course of three days in November 1990. Accordingly, we conclude that the District Court did not err when it denied Eva's request for a new trial after its May 19, 1992, order.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

July 29, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Joan Meyer Nye
NYE & MEYER, P.C.
3317 Third Ave. North
Billings, MT  59101

John Bobinski
Attorney at Law
P.O. Box 5117
Helena, MT  59604-5117

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy