900 P.2d 764

**Debra D. BAKER,**
Petitioner/Appellee/Cross–Appellant,

v.

**Harry K. BAKER,**
Respondent/Appellant/Cross–Appellee.

No. 2 CA–CV 95–0120.

Court of Appeals of Arizona,
Division 2, Department A.

July 25, 1995.

Todd Franks, P.C. by Todd Franks, Phoenix, for petitioner/appellee/cross-appellant.

Scott K. Midgley, P.C. by Scott K. Midgley, Phoenix, for respondent/appellant/cross-appellee.

## OPINION

FERNANDEZ, Judge.

In this appeal from the trial court's order modifying his child support obligation, appellant challenges the court's calculation of his adjusted gross income and complains that the court's findings of fact and conclusions of law were inadequate. Appellee cross-appeals, complaining that her award of attorney's fees was inadequate. We affirm.

The parties' marriage was dissolved in February 1985. Appellee was awarded custody of their three daughters, and appellant was ordered to pay child support in the amount of $1,050 per month. Several years later, appellant formed H.K.B., Inc., an Arizona corporation that does business as Southwest Industrial Rigging (SIR). Appellant is the sole stockholder of SIR, its president, and one of approximately 25 employees.

In June 1993, appellee sought to modify child support pursuant to the Arizona Child Support Guidelines in what is referred to as a simplified procedure under Guideline 19(b).

The children's ages at that time were 11, 13, and 14. The parties agreed at the hearing that the mother's income was $28,500 per year or $2,375 per month. The parties also agreed that in 1992, SIR paid appellant an annual salary of $52,000 and $3,300 toward his personal expenses. In addition, they stipulated that appellant earned $9,048 in rental income and $120 in interest income for a total income of $64,468 per year or $5,372 per month.

Appellee also urged the court to include in appellant's income what she claimed was $24,059 of "accelerated" depreciation taken by SIR, the $10,000 capital expenditure deduction SIR took pursuant to § 179 of the Internal Revenue Code, and all of SIR's year-end pretax gross profits, which amounted to $41,984. Adopting appellee's arguments and combining these amounts with those to which the parties had stipulated, the court found appellant's gross income to be $140,511 per year or $11,709 per month. When combined with the mother's monthly gross income of $2,375, the court determined the parties' monthly income to be $14,084, requiring a total monthly child support obligation in accordance with the Guidelines of $2,421, plus an additional $160 per month for two children over 12 years of age. Finding his portion of that income to be 83 percent, the court ordered appellant to pay appellee $2,142 per month. In addition, the court ordered appellant to pay $1,500 toward appellee's attorney's fees. This appeal followed.

### SELF–EMPLOYMENT INCOME

■ Appellant contends the trial court abused its discretion in calculating his adjusted gross income by including $24,059, which the court characterized as excess depreciation and $10,000 for the capital expenditure deduction.

Section 5(c) of the Arizona Child Support Guidelines addresses the calculation of income from self-employment or a closely held corporation, providing in pertinent part as follows:

> For income from self-employment ... or [a] closely held corporation, gross income means gross receipts minus ordinary and necessary expenses required to produce

income. "Ordinary and necessary expenses" does not include amounts determined by the court to be inappropriate for determining gross income for purposes of child support.

The section note states that the terms "Gross Income" and "Adjusted Gross Income," as they are used in the Guidelines, do not mean the same as they do for tax purposes. The Guidelines do not otherwise define ordinary and necessary business expenses, nor do they mention depreciation.

As the Connecticut Supreme Court noted in *Stoner v. Stoner,* 163 Conn. 345, 307 A.2d 146 (1972), courts seem to take one of three approaches to the treatment of depreciation in child support proceedings.[1] Under the first, depreciation is considered to be merely a book figure, which does not affect a parent's disposable income and cash flow and, therefore, does not qualify as a deduction from personal income for child support purposes. *Id.* at 349–51, 307 A.2d at 151; *McGinley–Ellis v. Ellis,* 622 N.E.2d 213 (Ind.App.1993), *vacated in part on other grounds,* 638 N.E.2d 1249 (Ind.1994); *Schelmeske v. Veit,* 390 N.W.2d 309 (Minn.App. 1986); *see also Stewart v. Stewart,* 243 Mont. 180, 793 P.2d 813 (1990); *In re Marriage of Mitchell,* 229 Mont. 242, 746 P.2d 598 (1987); *Commonwealth ex rel. ReDavid v. ReDavid,* 251 Pa.Super. 103, 380 A.2d 398 (1977).

A second approach allows depreciation to be taken as a deduction, on the ground that it diminishes income-producing capacity and leads to the eventual replacement of the asset. The Alaska Supreme Court, for example, reasoned that "[d]epreciation is a means of reflecting on an annual basis the costs of capital equipment. Such costs are real and should not be disregarded unless it appears that equipment was acquired in order to avoid or reduce the obligor's child support obligation." *Ogard v. Ogard,* 808 P.2d 815, 819 (Alaska 1991).

■ In *Stoner,* the court followed the third approach, under which "depreciation should not categorically either be deducted

---

1. We note that the court in *Stoner* cited *Smith v. Smith,* 89 Ariz. 84, 358 P.2d 183 (1960). Because there was no depreciation issue in *Smith,* we do not consider any factual conclusion in that case to have precedential value, as a matter of law.

as an expense or treated as income, but rather ... the extent of its inclusion, if any, should depend on the particular circumstances of each case." 163 Conn. at 351, 307 A.2d at 151. In following this approach, the court acknowledged that although depreciation does not actually reduce a parent's income,

> it represents additional cash available ... by permitting substantial tax deductions and, ultimately, tax savings. The fact that the [parent] may use some or all of the cash represented by depreciation to pay off principal indebtedness on the property is of no consequence since such payments, in effect, increase [the parent's] net worth and estate by increasing [the parent's] equity.

163 Conn. at 352–53, 307 A.2d at 152. We agree that this is the preferable and more practical approach. It requires trial courts to look at all the circumstances before deciding whether to allow a parent to deduct depreciation from his or her gross income and, if so, how much. *Id.* *See also Turner v. Turner,* 586 A.2d 1182 (Del.1991); *In re Marriage of Gaer,* 476 N.W.2d 324 (Iowa 1991); *Freking v. Freking,* 479 N.W.2d 736 (Minn.App.1992); *Laprade v. Laprade,* 784 S.W.2d 490 (Tex.App.1990). Courts must examine the nature of the depreciated property, the importance of its need in the business, the business's capital requirements, and all other relevant circumstances. We note that some jurisdictions apply a hybrid of this flexible method, providing by guidelines, procedural rules, or case law that the accelerated portion of depreciation presumptively cannot be deducted, but the straight line portion can, so long as the trial court in its discretion does not otherwise find it inappropriate. *See, e.g., Eagley v. Eagley,* 849 P.2d 777 (Alaska 1993); *Reid v. Reid,* 121 Idaho 15, 822 P.2d 534 (1992); *Marriage of Mitchell;* Colo.Rev.Stat. § 14–10–115(7)(a)(II)(B) (1992).

In this case, the trial court relied on an exhibit prepared by appellee's expert, which itemized various assets and depreciated them for 1991 and 1992 by two methods: straight line, which the accountant referred to as guideline depreciation, and accelerated, the method SIR actually used. Although we summarily reject appellant's claim that the court did not enter sufficient findings of fact and conclusions of law, we do note that the court did not expressly state its basis for

concluding that the $24,059 difference between the accelerated depreciation SIR took and the straight line figure constituted excess depreciation, which the court then attributed as income to appellant. However, we can infer the findings necessary to sustain the court's order. *See Lee Development Co. v. Papp,* 166 Ariz. 471, 803 P.2d 464 (App. 1990). We note further that no findings were necessary to comply with the Guidelines because, as the court stated in its minute entry overruling appellant's objection to the initial order, it had, in fact, followed the Guidelines.

The trial court determined appellant's income in accordance with the Guidelines, i.e., by subtracting the ordinary and necessary business expenses required to produce income from the gross receipts. We can infer from the court's findings in the record that it did not consider the difference between the two methods of depreciation to be an ordinary and necessary business expense as contemplated by the Guidelines. However, not only did the trial court fail to specify why the depreciation was considered excess, our review is further hampered by the fact that the parties have failed to include in the record on appeal evidence relating to this issue that was apparently presented below.

Although appellant has included in the appendix to his opening brief a transcript of the November 3, 1994 hearing, it was not designated as part of the record. Moreover, that transcript contains only the avowals of counsel as to what the evidence was expected to show and counsels' arguments on the issues. The minute entry from that date reflects that the parties testified at that hearing, but we do not have that portion of the transcript. Apparently appellant testified, as counsel avowed later, that the fair market value of the property listed on the schedule was less than the book value, showing that he had not overly depreciated the property and that it should not, therefore, be considered excess. As for appellee, she quotes what she characterizes as the testimony of her expert explaining why the accelerated method of depreciation resulted in excess depreciation. The transcript from the November 3 hearing, however, shows that this was not the expert's

testimony, but only counsel's avowal as to what the testimony would be. The record does include various schedules and corporate tax returns, including one from 1990, which shows that appellant had sold one asset and was required to report a gain of $40,000 because of recaptured depreciation. This, appellee contends, shows that the accelerated method resulted in excess depreciation, which she argues, will also occur with respect to the other assets on the schedule.

■ A party is responsible for making certain the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised on appeal. Ariz. R.Civ.App.P. 11, 17B A.R.S. When a party fails to include necessary items, we assume they would support the court's findings and conclusions. *In re Mustonen's Estate,* 130 Ariz. 283, 635 P.2d 876 (App.1981). Given that assumption, we cannot say the trial court abused its discretion. That at least one item was shown to have been excessively depreciated because of the prior recapture, together with the court's adoption of a flexible approach in applying only a portion of the depreciation to appellant's income, suggests that the court considered all relevant circumstances.

We next consider whether the court abused its discretion in considering the $10,000 capital contribution deduction under § 179 of the Internal Revenue Code. The deduction is a form of accelerated depreciation in that it permits up to $10,000 of the cost of certain equipment to be deducted in the year after its purchase without regard to the salvage value or useful life of the assets. It is a one-time business deduction for tax purposes and, as such, we do not believe it reflects an actual use of the asset. *See Ogard; In re Marriage of Deatherage,* 595 S.W.2d 36 (Mo.App.1980); *Cunningham v. Cunningham,* 378 Pa.Super. 280, 548 A.2d 611 (1988). We agree with the court in *Eagley* that it was appellant's burden to establish a relationship between the deduction and the actual use of the asset; on this record, he did not do so. Therefore, we cannot say the court abused its discretion in including this figure in its calculation of his income.

## PRETAX CORPORATION PROFITS

■ Appellant also contends the trial court abused its discretion in refusing to deduct from the corporation's gross profits of $41,984 for 1992 the $10,203 the corporation paid in state and federal taxes. If appellant had paid the corporate profits to himself as salary, there would have been no corporate income tax, and the full amount of the profits would be charged to appellant as gross income for child support purposes. His decision to pay taxes inside the corporation (instead of outside on a personal basis) should not alter the amount of gross income charged to him for child support purposes. We find the Guidelines definition of gross income broad enough to include the income from a wholly owned corporation without regard to the payment of taxes. Our conclusion is supported by Guideline 5(h), which states that the payment of income taxes has been considered in the support schedule.

## CROSS–APPEAL

■ The court awarded appellee $1,500 in attorney's fees, which she claims was inadequate. An award of fees in support modification proceedings is within the broad discretion of the trial court. *Burkhardt v. Burkhardt,* 109 Ariz. 419, 510 P.2d 735 (1973). Absent an abuse of that discretion, we will not disturb the court's order. *Badertscher v. Badertscher,* 10 Ariz.App. 501, 460 P.2d 37 (1969). In determining the amount, the court noted that appellee had chosen a simplified modification hearing. Moreover, the propriety of the amount was thoroughly litigated below. Based on this record, we cannot say the court abused its discretion.

The parties are responsible for their respective attorney's fees on appeal. Affirmed.

PELANDER and HATHAWAY, JJ., concur.