NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARK E. STUART, *Plaintiff/Appellant,*

*v.*

CITY OF SCOTTSDALE, et al., *Defendants/Appellees.*

No. 1 CA-CV 18-0154

FILED 12-8-2020

Appeal from the Superior Court in Maricopa County
No. CV2013-014458
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

COUNSEL

Witthoft Derksen PC, Phoenix
By Scott H. Zwillinger
*Counsel for Plaintiff/Appellant*

Scottsdale City Attorney's Office, Scottsdale
By Eric C. Anderson
*Counsel for Defendants/Appellees*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge David B. Gass and Judge Michael J. Brown joined.

_____

**P E R K I N S**, Judge:

¶1        Mark Stuart appeals from the superior court's findings and conclusions against him after a bench trial. He also appeals several of the superior court's post-trial rulings. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        This appeal concerns the Tournament Players Club golf course facility (the "Facility") in Scottsdale. The City of Scottsdale (the "City") leased the Facility to TPC Scottsdale, Inc. ("TPC") pursuant to a Lease and Management Agreement ("LMA") in 1984. The term of the LMA is 50 years, from June 10, 1985, to June 9, 2035, and TPC has the right to renew the lease under the same terms and conditions for an additional 25 years.

¶3        The LMA required the City to construct two eighteen-hole public golf courses (and related amenities) and lease them to TPC, which was required to "operate and oversee" the property "as a golf facility open to the general public," and to "maintain" the Facility "in first-class operating condition." The LMA referred to the two courses as the "Stadium Course" and the "Scottsdale Course." TPC was required to pay the City annual rent equal to 10% of "Golf Course Income" — defined as, among other items, green fees, cart fees, and driving range fees — and 2% of "Sales Income" — defined as income derived from the sale of food and beverages and pro shop sales. The LMA also required TPC to pay the operating expenses for the Facility.

¶4        Further, the LMA required the PGA Tour, Inc. (the "Tour) "to sanction and co-sponsor" a Tour event, the Phoenix Open, at the Facility each year for ten years, commencing in 1987. It authorized TPC to "suspend play by the general public at the Stadium Course for a period . . . not longer than fourteen (14) days per annum" to host the tournament. The City and TPC have since amended the LMA several times; one such amendment again required TPC to "sanction and co-sponsor the Phoenix Open or

another regular tour event" at the Facility for a period of 10 years, which expired in 2006.

¶5            On December 3, 2012, the City, TPC, and the Tour entered its most recent amendment to the LMA (the "Sixth Amendment"), which is the primary subject of this litigation. The recitals provided in part that the purposes of the Sixth Amendment were to:

1.      Extend the period during which the Regular TOUR Event will be held at the [] Facility.

2.      Require [TPC] and Tour to provide television coverage as set forth herein in connection with the Regular TOUR event.

3.      Provide for City construction and funding of certain capital repairs and replacements at the [] Facility.

4.      Provide for City's verification and auditing of the Net Operating Revenue under the [LMA].

¶6            The Sixth Amendment required the City to make renovations to the Facility at a cost of up to $15 million. The Sixth Amendment also increased the amount of Golf Course Income that TPC was obligated to pay the City each year from 10% to 12.5% for a period of 20 years.

¶7            As previously noted, TPC's contractual obligation to hold the Phoenix Open at the Facility (the "Event Commitment") had expired in 2006. But the Sixth Amendment provided:

Tour is not obligated to conduct the Regular TOUR event at the [] Facility each year. However:

[] If Tour fails to conduct the Regular TOUR Event at the Golf Facility during any year prior to 2016 because Tour did not have a sponsor of the Regular TOUR Event or the sponsor did not substantially perform (collectively a "Sponsor Failure"), then City shall have the right to terminate this Agreement unless Tour pays to City a certain payment (the "Sponsor Failure Payment") for each such year in which a Sponsor Failure occurs.

[] If more than one Sponsor Failure occurs during the years 2016 through 2022, then City shall have the right to terminate

3

this Agreement unless Tour pays to City a Sponsor Failure Payment for each such year in which a second or subsequent Sponsor Failure occurs.

. . . .

[] If Tour fails to conduct the Regular TOUR Event because of Tour Event Force Majeure, then City shall not have the right to terminate this Agreement or collect a Sponsor Failure Payment.

The amount of the Sponsor Failure Payment was fixed at 80% of the annual debt service on bonds issued by the City to fund capital projects, up to $960,000 per year.

¶8            The Sixth Amendment also set forth a Television Coverage Commitment, providing "[TPC] and Tour shall cause national coverage of the annual Regular TOUR Event to occur as described in their existing contracts with the Golf Channel and CBS for broadcast of the Regular Tour Event through at least 2021."

¶9            A Scottsdale City Council staff report submitted to the Council when it considered approving the Sixth Amendment estimated the increase in Golf Course revenues from 10% to 12.5% to result in approximately $173,000 of additional annual revenue for the 20-year period. The report also valued the Event Commitment at $1.4 million per year and the Television Coverage Commitment as $15.9 million per year.

¶10          Stuart filed his original complaint in this matter against the Scottsdale City Council and various individuals in their capacity as City officials in October, 2013, alleging the Sixth Amendment violated Article 9, Section 7 of the Arizona Constitution (the "Gift Clause") (Count 1) and Article 1, Section 3(O) of the Scottsdale City Charter (the "Anti-Subsidy Clause") (Count 2). He later amended his complaint to add seven more counts, five of which alleged additional Gift Clause violations by the City. Specifically, Count 3 alleged the City violated the Gift Clause in 2006 by expending $10 million to improve the Facility, and Counts 4-7 alleged Gift Clause violations arising from the original LMA executed in 1984. Stuart also added allegations that the City violated Arizona public records law (Count 8) and Scottsdale City public records law (Count 9) by failing to disclose certain documents.

¶11          The City filed a motion for summary judgment on all counts of Stuart's amended complaint. After the matter was fully briefed and

argued, the superior court granted summary judgment on Counts 3-9 and denied summary judgment as to Counts 1 and 2. The court reasoned that Counts 3-7 were barred by the statute of limitations in A.R.S. § 12-821. On Counts 8 and 9, the court found that the information Stuart sought was not a public record and not in the City's possession and control, and that the City had no duty to collect and release it. Finally, on Counts 1 and 2, the court held that a question of material fact existed as to the valuation of the Sixth Amendment to the LMA, and that the weighing of various expert opinions on the subject was a trial issue.

¶12        Stuart then filed a motion for summary judgment on Counts 1 and 2, alleging there was "not a scintilla of evidence" that the Sixth Amendment complied with the Gift Clause or the Anti-Subsidy Clause. The motion was again fully briefed and argued, and the superior court denied Stuart's motion, affirming its earlier determination that "a question of material fact exists as to the valuation of the Sixth Amendment to the Contract."

¶13        The superior court held a five-day bench trial on Counts 1 and 2, ultimately finding in favor of the City in a 24-page ruling. The City filed a motion for Arizona Rule of Civil Procedure 68 sanctions against Stuart for rejecting the City's offer of judgment earlier in the litigation. The City also filed a verified statement of costs. After full briefing and argument, the superior court granted the City's motion for Rule 68 sanctions by doubling the costs incurred after the City served its offer of judgment, and granted the City's other taxable costs incurred prior to the offer of judgment without doubling; the total award was $21,652.80.

¶14        After the superior court entered judgment for the City, Stuart filed a Rule 59 motion for new trial on Counts 3-9. Several days later, Stuart also filed a Rule 59 motion for new trial on Counts 1 and 2, along with another motion to exceed the page limit for the filing (the second new trial motion was 29 pages long, vastly exceeding the page limits for such a motion prescribed in Rule 7.1(a)). The superior court denied the request to exceed the page limit and summarily denied the motion for new trial on Counts 1 and 2 because it did not comply with Rule 7.1.

¶15        Stuart then filed a motion to extend the deadline to file a motion for new trial on Counts 1 and 2, which the superior court also denied. Nevertheless, Stuart filed an "amended" motion for new trial which simply added new trial arguments on Counts 1 and 2. The City moved to strike this filing, and Stuart responded. After holding argument, the superior court granted the City's motion to strike Stuart's amended motion

for new trial. The superior court also denied, after full briefing and argument, Stuart's motion for new trial on Counts 3-9. Stuart timely appealed.

## DISCUSSION

**¶16**        Stuart makes numerous claims of error on appeal, several of which we cannot adequately address because Stuart did not file transcripts pursuant to Arizona Rule of Civil Appellate Procedure ("ARCAP") 11. Instead, Stuart filed voluminous record documents — including portions of the relevant transcripts — in the appendices attached to his opening brief. But transcripts do not become part of the record on appeal through the appendices; certified transcripts must be filed pursuant to ARCAP 11. *See In re Property Located at 6757 S. Burcham Ave.*, 204 Ariz. 401, 404–05, ¶ 11 (App. 2003). Appendices may only include "those portions of *the record* and legal authorities that are cited in the brief and that are *essential* to decide an issue on appeal." ARCAP 13.1(b) (emphasis added). "We may only consider the matters in the record before us. As to matters not in our record, we presume that the record before the superior court supported its decision." *Burcham Ave*, 204 Ariz. at 405, ¶ 11 (quoting *Ashton-Blair v. Merrill*, 187 Ariz. 315, 317 (App. 1996)).

**¶17**        We therefore need not address Stuart's various contentions of trial error in the admission of testimony and portions of the superior court's rulings on his motions for new trial, some of which center around testimony and documents not properly in the record before us. *See Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) ("When a party fails to include necessary items, we assume they would support the court's findings and conclusions."). We will, however, address Stuart's legal claims, which do not require review of the relevant transcripts and other record documents not properly before us.

## I.    Gift Clause

**¶18**        Stuart raises several challenges to the superior court's finding that the Sixth Amendment did not violate the Gift Clause. He argues the Sixth Amendment lacks a public purpose; the Sixth Amendment lacked the requisite consideration; judicial estoppel should preclude the City from asserting a public purpose for its expenditures under the Sixth Amendment; the City's use of taxpayer guaranteed debt to assist a private business violates the Gift Clause; and the City Council breached its fiduciary obligation to the public by agreeing to the Sixth Amendment. We review the interpretation and application of constitutional provisions *de novo. Cheatham v. DiCiccio*, 240 Ariz. 314, 318, ¶ 8 (2016).

**¶19** The Gift Clause states that a municipality may not "give or loan its credit in the aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association, or corporation." Ariz. Const. art. 9, § 7. It prevents "depletion of the public treasury or inflation of public debt by engagement in non-public enterprise[,]" ensuring that public funds are not "used to foster or promote the purely private or personal interests of any individual." *Town of Gila Bend v. Walled Lake Door Co.*, 107 Ariz. 545, 549 (1971). We will uphold an expenditure challenged under the Gift Clause if "(1) it has a public purpose, and (2) the consideration received by the government is not 'grossly disproportionate' to the amounts paid to the private entity." *Cheatham*, 240 Ariz. at 318, ¶ 10. We take a "panoptic view of the facts . . . giv[ing] appropriate deference to the findings of the governmental body." *Wistuber v. Paradise Valley Unified Sch. Dist.*, 141 Ariz. 346, 349 (1984).

*A. Public Purpose*

**¶20** Our Supreme Court has adopted a "broad view" of the public purpose requirement in the Gift Clause context, and has "repeatedly emphasized that the primary determination of whether a specific purpose constitutes a 'public purpose' is assigned to the political branches of government, which are directly accountable to the public." *Turken v. Gordon*, 223 Ariz. 342, 349, ¶ 28 (2010).

**¶21** As the superior court correctly noted, "[a] governmental entity generally does not violate the Gift Clause when it makes improvements to its own property." *See Town of Gila Bend*, 107 Ariz. at 549–50. And that is exactly what the City did here — it expended $15 million to improve the Facility, which the City leases to TPC under the LMA.

**¶22** Moreover, as indicated in the recitals to the Sixth Amendment, the City intended to secure a commitment from the Tour to hold a tournament at the Facility for several years to come. The superior court found that this tournament generates substantial economic benefits to the City and is an important part of the City's tourism and marketing strategy. As noted above, we lack the requisite transcripts in our record to review this factual finding, *Baker*, 183 Ariz. at 73, and Stuart offers no contrary evidence to dispute it. Applying the deferential standard prescribed by our Supreme Court, we find the Sixth Amendment meets the public purpose requirement of the Gift Clause. *See Turken*, 223 Ariz. at 349, ¶ 28.

*B. Consideration*

**¶23** The second prong in a Gift Clause analysis is the consideration the public entity receives from the private entity. *Cheatham*, 240 Ariz. at 318, ¶ 10. "The Gift Clause is violated when that consideration, compared to the expenditure, is 'so inequitable and unreasonable that it amounts to an abuse of discretion, thus providing a subsidy to the private entity." *Turken*, 223 Ariz. at 349, ¶ 30 (quoting *Wistuber*, 141 Ariz. at 349).

**¶24** "[C]onsideration is what one party to a contract obligates itself to do (or to forbear from doing) in return for the promise of the other contracting party." *Id.* ¶ 31. "[A]nalysis of adequacy of consideration for Gift Clause purposes focuses . . . on the objective fair market value of what the private party has promised to provide in return for the public entity's payment." *Id.* at 350, ¶ 33. Anticipated indirect benefits may be relevant in this analysis, so long as they are bargained for as part of the contracting party's promised performance. *See id.*

**¶25** First, Stuart seems to overlook the fact that the City's expenditure of $15 million on improvements to the Facility was simply an expenditure to improve property the City leases to TPC. As noted above, a public entity generally does not violate the Gift Clause when it makes improvements to its own property. *See Town of Gila Bend*, 107 Ariz. at 549–50. The superior court, relying on substantial expert testimony, found that the City received $15 million worth of improvements to the Facility in exchange for its $15 million expenditure. And because we lack transcripts, we must assume the evidence supported this finding. *Baker*, 183 Ariz. at 73.

**¶26** But assuming further analysis is necessary, Stuart also ignores the fact that the City bargained for and received a 2.5% increase in annual Golf Course revenue to be received from TPC, an Event Commitment, and a Television Coverage Commitment. Again relying on substantial expert testimony, which we must assume supported the superior court's decision, *Baker*, 183 Ariz. at 73, the superior court found that the value of the Event Commitment and Television Coverage Commitment "far exceeds the $15 million that the City agreed to expend pursuant to the Sixth Amendment." Thus, we cannot find on this record that the consideration received for the City's expenditure was "so inequitable and unreasonable" as to violate the Gift Clause. *See Turken*, 223 Ariz. at 349, ¶ 30 (quoting *Wistuber*, 141 Ariz. at 349).

*C. Additional Arguments*

**¶27** Stuart raises three additional challenges to the superior court's Gift Clause ruling, which are easily addressed. He contends (1) judicial estoppel should preclude the City from asserting a public purpose for its $15 million expenditure; (2) the use of taxpayer guaranteed debt to fund the expenditure violates the Gift Clause; and (3) the City Council breached a fiduciary obligation to the public in agreeing to the Sixth Amendment.

**¶28** First, Stuart's judicial estoppel argument arises from his view that because the City takes the position TPC is not a public entity for public records purposes, then the City cannot appropriately contend TPC is a public golf facility for purpose of satisfying the Gift Clause. Stuart, however, confuses TPC Scottsdale, the Facility, with TPC, the private entity to which the City leases the Facility. Stuart does not identify any instance in which the City has taken the position that TPC, the private entity, is in fact a public entity, nor have we found such an instance in our own review of the record. This argument lacks merit.

**¶29** Second, Stuart's argument regarding the City's use of taxpayer guaranteed debt to finance its $15 million expenditure is completely devoid of citations to the record. But all relevant evidence as to how the City chose to finance its expenditure presumably exists in the trial testimony, which we cannot review for lack of transcripts. Nevertheless, the Sixth Amendment did not specify how the City should fund its $15 million expenditure, and the only case Stuart cites held that the use of revenue bonds to finance air and water pollution control facilities was permissible under the Gift Clause because they served a public purpose. *See Indus. Dev. Auth. of Pinal Cnty. v. Nelson*, 109 Ariz. 368, 373–74 (1973). Because we have already affirmed the superior court's finding that the City's $15 million expenditure served a public purpose, we find no error.

**¶30** Finally, Stuart cites no authority — and we have found none — for the proposition that the City Council owes a fiduciary duty in this context. Nor does Stuart state with any clarity how the City Council breached such a duty here. But the essence of Stuart's argument is that the City did not do its "due diligence" in assessing the terms of the Sixth Amendment (though Stuart cites no record evidence to support this claim). As the superior court correctly noted, the City Council's diligence in assessing the terms of the Sixth Amendment is not relevant to the Gift Clause analysis, which focuses on the terms of the transaction. *See Cheatham*,

240 Ariz. at 318, ¶ 10 (2016). We therefore reject this claim and hold that the Sixth Amendment did not violate the Gift Clause.

## II.    Anti-Subsidy Clause

¶31        Stuart next argues that the Sixth Amendment violated the Anti-Subsidy Clause in the Scottsdale City Charter. First, he contends that the superior court failed to "interpret [the Anti-Subsidy Clause] to give effect to voter intent." He also argues that the Sixth Amendment lacked a public purpose and the requisite consideration under the Anti-Subsidy Clause. We review issues of statutory interpretation *de novo*. *City of Scottsdale v. State*, 237 Ariz. 467, 469, ¶ 9 (App. 2015).

¶32        The Anti-Subsidy Clause provides:

> The City Shall not give or loan its credit in aid of, nor make any donation, grant or payment of any public funds by subsidy or otherwise, to any individual, association, or corporation, except where there is a clearly identified public purpose and the city either receives direct consideration substantially equal to its expenditure or provides direct assistance to those in need.

Scottsdale City Charter art. I, § 3(O).

¶33        Stuart first argues the superior court failed to adequately interpret this provision to give effect to voter intent. But he fails to explain why such an interpretation was necessary. While Stuart takes issue with the City's proposed interpretation before the trial, he does not state how the superior court's analysis of the Anti-Subsidy Clause relied on the City's interpretation. Indeed, the very same quotation from *Jett v. City of Tucson* that Stuart cites in his brief illustrates the point: "If the language is clear and unambiguous, we generally must follow the text as written. No extrinsic matter may be shown to support a construction that would vary its apparent meaning. In short, judicial construction is neither necessary nor proper." 180 Ariz. 115, 119 (1994). Because Stuart does not state how the superior court's Anti-Subsidy Clause analysis was contrary to the plain language of the provision, we reject this argument.

¶34        We then turn to Stuart's arguments that the Sixth Amendment did not have a "clearly identified public purpose" and that the City did not receive "direct consideration substantially equal to its expenditure." Scottsdale City Charter art. I, § 3(O).

¶35 As noted, the City did not simply pay TPC $15 million. Rather, the City invested $15 million on improvements to its Facility which it leases to TPC. In our view, this fact is sufficient to satisfy both the public purpose requirement and the consideration requirement under the Anti-Subsidy Clause. The superior court found that the "improvements made to City-owned golf facilities that are available for public use fifty weeks each year" constituted a clearly identified public purpose, and that the improvements were worth the $15 million that the City invested. We must assume the record supports these findings. *Baker*, 183 Ariz. at 73.

¶36 Assuming further analysis is necessary, the superior court also found a clearly identified public purpose in the fact that "the City was able to secure a continuing commitment to hold and televise an annual PGA Tour event at TPC Scottsdale that provides millions of dollars of promotional value and economic impact to the City." Regarding consideration, the City also bargained for and received a 2.5% increase in annual Golf Course revenue to be received from TPC, an Event Commitment, and Television Coverage Commitment. The superior court found that the value received from the Event Commitment and Television Coverage Commitment "far exceeds the $15 million that the City agreed to expend pursuant to the Sixth Amendment." We also must assume the record supports these findings, *id.*, and therefore hold that the Sixth Amendment satisfied the plain language of the Anti-Subsidy Clause.

## III.  Rule 59 Motions for New Trial

¶37 Stuart contends the superior court erred in refusing to consider his new trial motions related to Counts 1 and 2, and again advances many of the substantive arguments from those motions on appeal. He also argues the superior court erred in denying his motion for new trial on Counts 3-9. We review the denial of a motion for new trial for an abuse of discretion. *Jaynes v. McConnell*, 238 Ariz. 211, 215–16, ¶ 13 (App. 2015). We review the interpretation and application of court rules *de novo*. *Maher v. Urman*, 211 Ariz. 543, 546, ¶ 6 (App. 2005). We also review a document's status as a public record *de novo*. *Lake v. City of Phoenix*, 222 Ariz. 547, 549, ¶ 7 (2009).

### A.  Counts 1 and 2

¶38 Several days after filing his motion for new trial on Counts 3-9, Stuart timely filed another 29-page motion for new trial on Counts 1 and 2. He also simultaneously filed a motion to exceed the 17-page limit for new trial motions in Rule 7.1(a). Finding "no justification for [Stuart's] inability

11

to comply with the page limits[,]" the superior court denied his request to exceed the page limit, and also summarily denied his new trial motion on Counts 1 and 2 for lack of compliance with Rule 7.1.

**¶39**      Stuart argues the superior court's strict adherence to the page requirements in Rule 7.1 "defeats the purpose of Rule 59." We disagree. The Rule plainly states that, "[u]nless the court orders otherwise, a motion and supporting memorandum *may not* exceed 17 pages, exclusive of attachments and any required statement of facts." Ariz. R. Civ. P. 7.1(a)(2) (emphasis added). The superior court found no justification for Stuart's deviation from this requirement, and Stuart states no such justification on appeal. Instead, Stuart simply asserts the City would not have been prejudiced by the length of the motion. Our review of the record suggests Stuart himself would not have been prejudiced by adhering to the 17-page limit; as the City points out, Stuart later managed to file an amended motion for new trial on *all* Counts that was within the 17-page limit. We find no error in the superior court's denial of Stuart's motion for new trial on Counts 1 and 2 and accompanying request to exceed the page limit.

**¶40**      Stuart also argues the superior court erred in failing to consider his amended motion for new trial on Counts 1 and 2. Undeterred by the superior court's denial of his motion for new trial on Counts 1 and 2, Stuart simply filed an amended motion for new trial which added Counts 1 and 2 to his arguments on Counts 3-9. The City moved to strike this filing, which the superior court granted.

**¶41**      A party may amend a motion for new trial "at any time before the court rules on it." Ariz. R. Civ. P. 59(b)(1). But the superior court found that this was not simply an amendment; it was an "attempt to resurrect" Stuart's arguments under Counts 1 and 2, which had already been denied.

**¶42**      The superior court cited *Butler Products Co., Inc. v. Roush*, which held that "the substance of [a new trial] motion" must be filed "within 15 days after the judgment." 145 Ariz. 32, 33 (App. 1984). In *Butler Products*, a party filed a timely Rule 59 motion for new trial requesting a new trial but citing no specific basis for relief. *Id.* The party later attempted to amend the motion by "fil[ing] a memorandum stating the grounds" for new trial. *Id.* The court denied the first motion because it did not specify grounds for relief and refused to address the merits of the second filing because it was substantively an untimely motion for new trial. *See id.* at 33–34.

¶43 The superior court's reliance on *Butler Products* was correct. Just as the party in *Butler Products* attempted to add substantive arguments on its new trial motion after the deadline for Rule 59 motions had expired, Stuart here attempted — perhaps more boldly — to untimely add his Rule 59 arguments on Counts 1 and 2 to his earlier, timely motion on Counts 3-9, even after the superior court had already denied them. Stuart further argues the superior court violated his due process rights by granting the City's motion to strike his amended motion "based upon its own extensive legal research and arguments, not because of arguments and research offered by [the City]." Rather than find fault, we commend the superior court judge for his thorough legal research and thoughtful ruling. And we note Stuart advances arguments on appeal without citation to legal authority, inviting us to engage, as we must, in our own legal research and analysis.

¶44 We find no error in the superior court's denial of Stuart's motion for new trial on Counts 1 and 2 and his attempt to amend them into his original motion on Counts 3-9. To the extent we can review his substantive new trial arguments regarding Counts 1 and 2 given the lack of transcripts, we decline to do so because Stuart waived them by failing to timely file a motion for new trial on Counts 1 and 2. *See Sobol v. Marsh*, 212 Ariz. 301, 303, ¶ 7 (App. 2006) ("[A] Party cannot argue on appeal legal issues and arguments that have not been specifically presented to the trial court.").

   *B. Counts 3-9*

¶45 Stuart argues the superior court erred in denying his Rule 59 motion for new trial on Counts 3-9. He contends the superior court erred by holding the statute of limitations barred Counts 3-7, and that the superior court further erred in denying his public records claims in Counts 8 and 9.

¶46 In its ruling on Stuart's statute of limitations arguments as applied to Counts 3-7, the superior court correctly noted that Stuart failed to raise these arguments in his original response to the City's motion for summary judgment on Counts 3-9. The court therefore held that Stuart waived these arguments, though it nonetheless went on to address the substance of the arguments. We agree that Stuart waived these arguments by failing to raise them in his original response to the City's motion for summary judgment and we decline to address them on appeal. *See Medlin v. Medlin*, 194 Ariz. 306, 308, ¶ 6 (App. 1999) ("An issue raised for the first time after trial is deemed to have been waived.").

¶47        Turning to Stuart's public records arguments on Counts 8 and 9, we agree with the superior court's ruling.

¶48        In Stuart's amended complaint, he argued the City violated Arizona public records law by failing to provide financial records listed in Section 6.1.12 of the LMA (Count 8), and that the City violated Scottsdale City public records law by failing to provide financial records listed in sections 1.1.2 and 6.1.12 of the LMA.

¶49        A.R.S. § 39-121 provides that "[P]ublic records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours." Article 13, Section 1 of the Scottsdale City Charter provides that "[a]ll records and accounts of every office, department or agency of the city shall be open for inspection by any citizen, any representative of a citizen's organization or any representative of the press at all reasonable times pursuant to all applicable laws."

¶50        Section 1.1.2 of the LMA defined "Annual Financial Statements" as

> [T]he annual financial statements prepared by [TPC] in accordance with generally accepted accounting principles consistently applied and certified by an independent certified accountant, and annual financial statements prepared on a cash receipts and disbursements basis showing the Golf Course Income, Sales Income and Operating Expenses of the Golf Facility, for the preceding Fiscal Year.

Section 6.1.12 of the LMA required TPC:

> To prepare Annual Financial Statements and submit same to City within ninety (90) days after the end of each Fiscal Year and, throughout the Term hereof, to keep and maintain adequate and detailed books of account and financial records . . . with respect to the operation, maintenance and management of the [] Facility. All such books and records shall be available for inspection by City or its authorized representative during regular business hours upon at least three (3) days' prior written notice to [TPC.]

¶51        To qualify as a "public record," a document must be in the possession and control of a public official. *Salt River Pima-Maricopa Indian Cmty. V. Rogers*, 168 Ariz. 531, 541–42 (1991). In its ruling on the City's motion for summary judgment, the superior court found that the

14

documents Stuart requested were "not in the possession and control" of the City, and that the City "ha[d] no duty to collect and then release" the documents. In its later new trial ruling, the superior court found no error in its earlier ruling that the requested documents were not in the City's possession and noted that Stuart himself did not dispute this finding. Stuart also does not dispute this finding on appeal.

¶52 Instead, Stuart argues on appeal, as he did in the new trial proceedings, that the City had an "obligation" to obtain and keep these documents. But section 6.1.12 of the LMA only establishes the City's *right* to receive the records from TPC; it does not create an *obligation* for the City to keep and hold such records. In sum, we find no error in the superior court's ruling that the records were not in the City's possession and that the City had no obligation to keep and release the documents.

## IV.    Rule 68 Sanctions

¶53 Stuart argues the superior court erred in imposing Rule 68 sanctions against him. We review the imposition of Rule 68 sanctions for an abuse of discretion but review the court's interpretation of Rule 68 *de novo*. *Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 15, ¶ 31 (App. 2011).

¶54 Rule 68(a) allows any party to make to any other party "an offer to allow judgment to be entered." The purpose of the rule is "to encourage settlement and eliminate needless litigation[.]" *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 138, ¶ 57 (App. 2008). If the offeree rejects the offer and fails to obtain a more favorable judgment after doing so, that party must pay the offeror's reasonable expert witness fees and double taxable costs incurred after the offer. Ariz. R. Civ. P. 68(g)(1). The offeree must serve written notice of any objections to the validity of the offer within 10 days of receiving the offer. Ariz. R. Civ. P. 68(d)(2). If the offeree fails to file a timely objection, that party waives the right to object to the validity of the offer in a subsequent proceeding to determine sanctions. *Id.*

¶55 Here, the City served its offer of judgment on Stuart in September 2014, well before the summary judgment proceedings and subsequent bench trial. Stuart did not accept the offer, file written notice of objections to its validity, or obtain a more favorable judgment after rejecting the offer. Ariz. R. Civ. P. 68(d)(2), (g)(1). He therefore waived any objections to the validity of the offer, and we need not address them here. *See* Ariz. R. Civ. P. 68(d)(2). The superior court properly granted the City's motion for Rule 68 sanctions.

## V.      Attorneys' Fees on Appeal

**¶56**        The City, as the prevailing party, requests attorneys' fees as a sanction against Stuart for filing a frivolous appeal under ARCAP 25. We apply an objective test to determine whether an appeal is "frivolous" under ARCAP 25, analyzing whether "the issues raised are supportable by any reasonable legal theory, or if a colorable legal argument is presented about which reasonable attorneys could differ[.]" *Matter of Levine*, 174 Ariz. 146, 153 (1993). We do note our discontent with Stuart's appellate briefing. He routinely failed to include adequate citations to relevant legal authority and record documents and failed altogether to properly include the relevant transcripts in the record on appeal pursuant to ARCAP 11. This was true even though Stuart requested and received multiple time extensions to file his opening brief. But Stuart did present issues that were supportable by reasonable legal theory, and we decline to sanction him. *See Price v. Price*, 134 Ariz. 112, 114 (App. 1982) (quoting *In re Marriage of Flaherty*, 646 P.2d 179, 188 (Cal. 1982)) ("Because the line between a frivolous appeal and one which simply has no merit is fine . . . the power to punish attorneys or litigants for prosecuting frivolous appeals 'should be used most sparingly . . . .'"). As the prevailing party, the City may recover costs upon compliance with ARCAP 21.

## CONCLUSION

**¶57**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

16