NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.F.

No. 1 CA-JV 25-0081
FILED 11-20-2025

---

Appeal from the Superior Court in Maricopa County
No. JD534759
The Honorable Michael Rassas, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Mother*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee Child*

Arizona Attorney General's Office, Phoenix
By Maureen Stansberry Kottmer
*Guardian ad Litem for Appellee Child*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**          Adrianh H. ("Mother") appeals the termination of her parental rights to Aurora (a pseudonym).[1] We affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**          The Department of Child Safety ("DCS") first became involved with Mother before Aurora's birth. In April 2022, DCS petitioned for dependency for Aurora's siblings based on Mother's neglect, substance abuse, domestic violence, and mental health concerns. DCS removed the siblings when drug paraphernalia was found in the parents' homeless shelter room. At that time, shelter staff reported that the parents were not actively seeking stable housing. DCS began providing Mother with drug treatment and testing, supervised visitation, mental health services, parenting classes, and housing resources. But Mother only engaged sporadically.

**¶3**          In January 2023, Mother gave birth to Aurora. Aurora was diagnosed as a "medically fragile infant," with medical conditions requiring her to use a feeding tube. She later required surgery for her digestive tract and was also found to have a hole in her heart. Aurora remained in the hospital for two months. Upon her release, DCS took custody of Aurora and placed her in a foster home. Mother thought "[DCS] and [the] hospital were overblowing [Aurora's] medical concerns and that she did not need as much care as was being recommended." The court found Aurora dependent, and since then, Aurora has remained in foster homes.

**¶4**          DCS noted its concerns with Mother's sobriety, housing, and income stability, and her ability to care for Aurora's medical needs. To this

---

[1]      Aurora's father's rights were simultaneously terminated, but he is not a party to this appeal.

end, DCS continued to provide reunification services, including supervised visitation, drug testing and treatment, mental health treatment, housing support, and parenting classes. While Mother engaged in visitation, drug treatment, and mental health services, she did not engage in drug testing or parenting classes. She continued to minimize Aurora's medical needs and inconsistently attended her medical appointments.

**¶5** In March 2025, Aurora moved to terminate the parental relationship. Mother appeared and contested the severance at the initial hearing, during which the court warned her that if she failed to appear at future proceedings, it could adjudicate the issues in her absence. When Mother failed to appear at the next hearing, the court found she had waived her right to contest the allegations, received evidence, and terminated Mother's parental rights on substance abuse, six months' time in care, and fifteen months' time-in-care grounds. *See* A.R.S. § 8-533(B)(3), (B)(8)(b), (B)(8)(c). Mother appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 8-235(A) and 12-120.21(A)(1) and Arizona Rule of Procedure for the Juvenile Court 601(a).

## DISCUSSION

**¶6** A parent's right to "the care, custody, and management of their child[] [is] fundamental, but not absolute." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97-98, ¶ 7 (App. 2016). The court may terminate that right based on clear and convincing evidence of a statutory ground for termination and a preponderance of the evidence that severance is in the child's best interests. *Id.* If the evidence supports one ground for termination, we need not consider the other grounds. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

**¶7** Under A.R.S. § 8-533(B)(8)(c), the court may terminate parental rights if (1) the child has been in court-ordered out-of-home placement for fifteen or more months, (2) DCS has made a diligent effort to provide appropriate reunification services, (3) the parent has been unable to remedy the circumstances causing the out-of-home placement, and (4) the evidence establishes a substantial likelihood the parent will be unable to parent effectively in the near future. *See also In re J.C.*, 259 Ariz. 60, 69, ¶ 36 (App. 2024).

**¶8** Mother challenges the termination on three grounds. She contends the record did not support the court's findings on the statutory grounds for termination or that DCS made diligent efforts to provide

3

reunification services. She also argues the court erred by finding severance in the child's best interests.

**¶9**         The juvenile court is better situated "to weigh the evidence, observe the parties . . . and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quotation omitted). Thus, we accept its factual findings "if reasonable evidence and inferences support them." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016). We do not reweigh the evidence on appeal. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18. And we will only overturn the court's legal conclusions if they are clearly erroneous—that is, if "no one could reasonably find the evidence to be clear and convincing." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478-79, ¶ 31 (2023) (quotation omitted).

## A.     Reasonable Evidence Supports the Court's Finding That DCS Made Diligent Reunification Efforts.

**¶10**        A diligent effort "requires—at the least—DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019) (citation and emphasis omitted). DCS is not required "to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa County Juv. Act. No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). But it must provide the parent with sufficient time and opportunity to participate, so the parent may improve his or her ability to care for the child. *Jordan C.*, 223 Ariz. at 94, ¶ 20. Courts examine the totality of the circumstances to determine whether DCS made diligent efforts. *Donald W.*, 247 Ariz. at 23, ¶ 49.

**¶11**        When DCS removed Aurora, it noted Mother failed to recognize her substance abuse's effects on Aurora, and that she needed stable housing and income. Mother also minimized Aurora's medical needs. DCS provided housing support, parenting assistance, and substance abuse assistance. And Mother could attend at least some of Aurora's medical appointments. The record supports that DCS made diligent efforts and provided Mother sufficient time to participate.

**¶12**        Mother claims that the record does not show that DCS provided diligent efforts to help her understand Aurora's medical needs. Mother was notified of at least some of Aurora's medical appointments,

during which professionals explained the medical issues. To the extent that Mother challenges the sufficiency of the services provided, that claim needed to be raised before the juvenile court in the first instance. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014). And to the extent that Mother challenges the sufficiency of the evidence, her objection before the juvenile court would have established a more complete record of the services provided. *See id.* at ¶¶17-18. Although Mother objected to the reunification services before the juvenile court in May 2024, the grounds for the objection are not apparent in the record on appeal. As the appellant, Mother had the duty to ensure that the record included all necessary documents for us to review the issues. *See Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995); ARCAP 11(c)(1). Without that record, we presume that Mother did not challenge the sufficiency of services before the juvenile court. *See Baker*, 183 Ariz. at 73 ("When a party fails to include necessary items, we assume they would support the court's findings and conclusions.").

¶13 Mother's challenge to the evidence supporting DCS's consistent contact also fails. DCS repeatedly communicated with Mother about drug testing, reopened services, and communicated with the court and the Foster Review Board about Mother's situation. From this, the juvenile court could reasonably infer that DCS stayed in communication with Mother. That the evidence was not introduced during the trial is inconsequential, as it was in the court's records. The juvenile court is not limited to considering the testimony and exhibits at trial; it may review the entire record of the case. Ariz. R.P. Juv. Ct. 353(f)(2); *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 215, ¶ 34 (App. 2008).

¶14 Finally, Mother's claim that she was given insufficient time and opportunity to improve her mental health is belied by the record. Mother's mental health was a noted concern in 2022, and DCS tried to provide services for her at that point. In early 2024, DCS provided Mother with a psychological evaluation and provided therapy starting in December 2024. Mother had about half a year to engage in therapy before the termination hearing and could have engaged services earlier. The court did not err by finding Mother had sufficient time to participate in mental health services.

¶15 We see no clear error in the court's diligent reunification efforts finding.

**B.      Reasonable Evidence Supports Mother Being Unable to Parent in the Near Future.**

¶16      The fifteen-months out-of-home placement ground considers not only a parent's efforts but also the parent's success (or failure) in changing the circumstances leading to placement. *In re J.C.*, 259 Ariz. at 68, ¶ 38; A.R.S. § 8-533(B)(8)(c). Under this prong, the party requesting severance bears the burden of proving "it is substantially likely the parent will be unable to exercise proper and effective parental care and control in the near future." *See In re J.C.*, 259 Ariz. at 68, 69, ¶¶ 36, 38; *Jordan C.*, 223 Ariz. at 97, ¶ 33.

¶17      Reasonable evidence supports the superior court's conclusion that Mother may be unable to parent effectively in the near future. While Mother points to her participation in services as proof of her ability to care for Aurora, the record is silent about improvements in her ability to maintain a steady income—a noted concern throughout the dependencies. And Mother continued to minimize Aurora's medical needs. There is no evidence that Mother could care for Aurora's additional needs. The court did not err in this finding.

**C.      Mother Shows no Error in the Best-Interests Analysis.**

¶18      Once a parent is found unfit, i.e., the court finds a statutory ground for termination, "the focus shifts to the interests of the child" rather than the parent. *Alma S.*, 245 Ariz. at 150, ¶ 12 (quotation omitted). The court's concern at this stage is the child's interest in stability, security, and a safe and stable home life. *Demitrius L.*, 239 Ariz. at 4, ¶ 15. To that end, termination serves the child's best interests if the totality of the circumstances shows the child would benefit from severance (like when they are in an adoptable or more stable placement) or be harmed by its denial. *Alma S.*, 245 Ariz. at 150-51, ¶ 13; *Dominique M.*, 240 Ariz. at 98, ¶ 8.

¶19      Mother contends that the court failed to consider the totality of the circumstances by overlooking her rehabilitation efforts. A parent's rehabilitation efforts should indeed be part of a court's best-interests analysis. *See Alma S.*, 245 Ariz. at 151, ¶ 15. But Mother fails to show that the court did not consider her rehabilitation efforts. *See State v. Ramirez*, 178 Ariz. 116, 128 (1994) (A trial court is presumed to know and follow the law.). The court twice stated that it considered the evidence submitted at trial, including evidence of Mother's rehabilitation and recovery. And in its termination order, the court stated it "heard, considered, and weighed all of the testimony [and] admitted exhibits." Given this, Mother's argument

is not a challenge to the sufficiency of the evidence but an invitation for us to reweigh the evidence. We decline. *See Alma S.*, 245 Ariz. at 151, ¶ 18.

**¶20** Reasonable evidence supported the court's finding about the best interests of the child. While Aurora participated in familial visits, she was adoptable and bonded with an adoptive placement that could care for her medical needs. She had been in an out-of-home placement and away from Mother shortly after her birth. And if her placement did not adopt her, she is adoptable by others. The record supports the court determining that severance would further the plan of adoption and provide Aurora with permanency and stability. We find no error in its determination.

## CONCLUSION

**¶21** We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JT