NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

SYMONE PERRRIS STEWART, *Plaintiff/Appellee*,

*v.*

DENISE FLOYD, *Defendant/Appellant.*

No. 1 CA-CV 25-0788 FC

FILED 04-13-2026

Appeal from the Superior Court in Maricopa County
No. FC2025-002938
The Honorable Nichole Galusha, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Denise Floyd, Avondale
*Defendant/Appellant*

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which
Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

**K I L E Y**, Judge:

¶1          Denise Floyd appeals an order of protection prohibiting her from having contact with her grandson. Because she has failed to establish error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          One day in mid-July 2025, Symone Stewart's two-year-old son, A.F., suffered an injury to his arm while he was in the care of his grandmother, Floyd. Stewart's stepdaughter, who was present at the time, later told Stewart that Floyd "yanked [A.F.'s] arm" and then, after he fell or threw himself on the floor, "pull[ed] him" up "from the ground by the same arm."

¶3          A.F.'s father took him to the emergency room. Stewart met them there. As she later recalled, the attending doctor told her that A.F.'s arm "was dislocated at the elbow," and that the injury was caused by being "pulled or yanked with a certain amount of force." When Stewart confronted her, Floyd denied pulling A.F.'s arm, stating that he "threw himself to the floor" during a tantrum and "land[ed] on his arm[,] . . . hurting it."

¶4          Stewart petitioned for an order of protection ("OOP"), alleging that Floyd had injured A.F. by forcefully pulling his arm and asking that Floyd be ordered to "stay away" from herself and A.F.  The court granted the OOP *ex parte*.

¶5          Floyd requested an evidentiary hearing to contest the OOP. At the hearing, Stewart, Floyd, and A.F's father all testified and documentary evidence, including A.F.'s emergency room discharge papers, was presented. The discharge papers show that A.F. was diagnosed with radial head subluxation or "nursemaid's elbow." The papers reflect that this injury occurs when "a bone of the elbow" is "pulled out of place and gets stuck in that position," and that this type of injury "often happens when you lift or pull the child by one or both arms."

¶6          At the end of the hearing, the court found by a preponderance of the evidence that Floyd "may commit an act of domestic violence or has committed an act of domestic violence within the last year," and so ordered that the OOP would remain in effect.

**¶7**   Floyd timely appealed. We have jurisdiction pursuant to Article 6 Section 9 of the Arizona Constitution, A.R.S. § 12-2101(A)(5)(b), and Ariz. R. Protective Order P., Rule 42(a)(2).

## DISCUSSION

**¶8**   Floyd argues that the superior court erred both by issuing the OOP and then continuing it in effect. We review the superior court's ruling on an order of protection for an abuse of discretion. *Michaelson v. Garr*, 234 Ariz. 542, 544, ¶ 5 (App. 2014). A court abuses its discretion when the court makes an error of law or the record is devoid of evidence to support the court's discretionary decision. *Mahar v. Acuna*, 230 Ariz. 530, 534, ¶ 14 (App. 2012).

**¶9**   Stewart has not filed an answering brief. We may consider an appellee's failure to file an answering brief as a confession of reversible error when the opening brief raises debatable issues. *Savord v. Morton*, 235 Ariz. 256, 259, ¶ 9 (App. 2014). However, we are not required to do so. *Id.*; *see also Flynn v. Flynn*, 257 Ariz. 1, 3, ¶ 6 (App. 2024) (declining to reverse order continuing OOP in effect even though no response filed to appellant's opening brief). Declining to reverse based solely on the appellee's failure to file an answering brief is particularly appropriate in cases in which "a child's best interests are involved." *In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 2 (App. 2002); *see also Matter of Mayberry v. Stambaugh*, No. 1 CA-CV 23-0289 FC, 2024 WL 1282653 at *5, ¶ 20 (Ariz. App. Mar. 26, 2024) (mem. decision) (Morse, J., specially concurring) ("[I]n cases involving children's best interests, we may decline to treat a failure to respond as an implied confession of error if doing so would have an adverse effect on the children." (citation omitted)). Because this case concerns the well-being of a child, we decline to reverse based upon Stewart's failure to file an answering brief.

**¶10**   To grant an OOP, the court must find "reasonable cause" to believe that "[t]he defendant may commit an act of domestic violence" or "has committed an act of domestic violence within the past year[.]" A.R.S. § 13-3602(E)(1),(2); Ariz. R. Protect. Ord. P. 23(e)(1). Further, the court must find that the victim and the defendant have shared a residence or have a familial or intimate relationship as defined in statute. *See* A.R.S. § 13-3601(A).

**¶11**   Floyd argues that the court violated her procedural due process rights by "grant[ing] this order without providing [Floyd] any notice or opportunity to be heard." We review *de novo* constitutional issues,

including claims that the trial court denied a litigant his or her right to due process. *Matter of Guardianship of A.K.*, 258 Ariz. 336, 343, ¶ 16 (App. 2024).

¶12 Due process "entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaningful manner, as well as a chance to offer evidence and confront adverse witnesses." *Solorzano v. Jensen*, 250 Ariz. 348, 350, ¶ 9 (App. 2020). Although A.R.S. § 13-3602 authorizes a court to issue an OOP *ex parte*, that statute and applicable court rules also entitle the respondent, upon request, to a prompt hearing to contest the OOP. The hearing must be held within ten court business days, and can be continued only upon a showing of good cause. A.R.S. § 13-3602(E), (L); Ariz. R. Protect. Ord. P. 23(e)(1), 38(b). At the hearing, the court must "ensure that both parties have an opportunity to be heard, to present evidence, and to call and cross-examine witnesses[,]" Ariz. R. Protect. Ord. P. 38(g)(1), and the burden of proof to justify the OOP is heightened from the "reasonable cause" standard required at the *ex parte* hearing to a "preponderance of the evidence" standard. *Compare* A.R.S. § 13-3602(E) *with* Ariz. R. Protect. Ord. P. 38(g)(3). Applicable statutes and rules thus ensure that a person against whom an OOP has been issued *ex parte* has a prompt and meaningful opportunity to challenge it. *See Gilbert v. Sherman*, 1 CA-CV 24-0630 FC, 2026 WL 394902 at *2, ¶ 11 (Ariz. App. Feb. 12, 2026) (published) ("In the context of evidentiary hearings for protective orders, [court rules] ensure due process rights to notice and opportunity to be heard.").

¶13 The record shows that after the court issued the OOP *ex parte*, Floyd requested a hearing on August 11, 2025. The hearing was held ten court business days later, on August 25, 2025. And because Floyd did not arrange for a transcript of the *ex parte* hearing to be included in the record, we must presume that the evidence presented at the *ex parte* hearing was sufficient to support the court's issuance of the OOP. *Baker v. Baker*, 183 Ariz. 70, 73 (App. 1995) ("A party is responsible for making certain the record on appeal contains all transcripts or other documents necessary for us to consider the issues raised on appeal. When a party fails to include necessary items, we assume they would support the court's findings and conclusions." (citations omitted)); *LeMay v. LeMay*, No. 1 CA-CV 20-0425 FC, 2021 WL 4271966 at *4, ¶ 21 (App. Sept. 21, 2021) (appellate court was unable to evaluate appellant's claim that judge violated his due process rights without a transcript of the hearing).

¶14 Floyd next argues that the court erred in continuing the OOP in effect because, she asserts, the evidence does not support a finding that she caused A.F.'s injury. The child's injury, she contends, resulted from "an

accident" in which he "hurt his arm" when he "threw himself on the floor" during "a brief tantrum." A.F.'s injury is "not consistent with the type of intentional or forceful action described by" Stewart. Indeed, she contends, Stewart and A.F.'s father both admitted at the hearing that A.F. suffered the same injury "a year [earlier] while on a family vacation." Further, she contends, Stewart's "version of events changed multiple times" and "include[d] several inconsistencies and hearsay statements."

¶15        The record further shows that Stewart, Floyd, and A.F.'s father all testified at the hearing. Nothing in the record indicates that Floyd was prevented from presenting any testimony or other evidence. At the hearing, A.F.'s emergency room discharge papers were admitted as an exhibit. The explanation on the papers of how such injuries "often happen[]" was consistent with Stewart's allegation that A.F. sustained the injury when he was pulled forcefully by the arm. And because Floyd has not provided us with a transcript, we are unable to review her remaining challenges to the evidence presented at the hearing, but must, instead, presume that the missing transcript would support the trial court's decision to continue the OOP. *Baker*, 183 Ariz. at 73; *see also Kohler v. Kohler*, 211 Ariz. 106, 108, ¶ 8 n.1 (App. 2005) ("In the absence of a transcript, an appellate court will presume that the record supports the trial court's rulings.").

## CONCLUSION

¶16        For the foregoing reasons, we affirm the order of protection.

